WARE RIVER RAILROAD COMPANY *vs.* CHAUNCEY VIBBARD & others.

A contractor agreed with a railroad corporation to construct its road, taking stock in payment, and bargained with an importer that the importer should furnish him the rails upon credit upon a deposit, *pro ratâ* as they were delivered, of the stock as collateral security, it being agreed by all parties that the rails were to be delivered directly to the corporation, they forwarding the contractor's stock directly to the importer. The importer bonded a cargo of rails, taking the warehouse receipt in his own name, and forwarding to the contractor a bill of parcels, which the contractor transferred to the corporation. The corporation and the contractor having become insolvent, the collateral security was not furnished, and, the rails not being paid for, the importer refused to transfer the warehouse receipt. Upon a bill in equity by the corporation against the importer to compel the delivery of the rails, *Held*, that the corporation had an interest in the agreement between the contractor and the importer which equity would enforce; but that the importer had a lien upon the rails for the unpaid purchase money, whether the title in them had or had not passed to the contractor; and that the corporation was entitled to the rails upon payment of what was due the importer.

BILL IN EQUITY against the partnership of Vibbard, Foote & Company, the partnership of Jay Cooke & Company, George L. Brastow and Gardner Prouty, to compel the defendants to transfer and deliver to the plaintiffs 4190 iron rails lying in a United States bonded warehouse in Charlestown, to obtain the possession

of which the plaintiff had, as the bill alleged, sued out a writ of replevin, giving a bond in twice the value of the property, upon which the officer had returned that he had replevied the rails and delivered them to the plaintiff, and that the plaintiff had receipted for them ; but it was alleged that they were not in fact replevied, the possession being withheld by Brastow and Prouty, the keepers of the warehouse, who refused to deliver without the delivery order which was in the possession of the other defendants. The material facts are stated in the opinion.

*F. W. Hurd*, for the plaintiff.

*H. W. Paine & R. D. Smith*, for the defendants.

WELLS, J.* The plaintiff entered into a contract with N. A. Smith & Co. to construct its road, furnish all the materials, and deliver possession thereof finished and complete, ready for use, within two years from September 1, 1870. The contract was dated September 9, 1870. The consideration agreed on was $1,200,000, to be paid as follows, namely, $500,000 in first mortgage bonds of the road, and $700,000 in shares of its stock, both at par ; $100,000 of the stock to be retained as a margin for security of performance. The bonds and the rest of the stock were to be delivered monthly, in proportion to the progress of the work, upon certificates of the engineer.

N. A. Smith & Co. having bargained with Vibbard, Foote & Co., of New York, to furnish the iron rails, chairs and spikes for laying the track, subsequently, namely, in October, 1871, entered into a formal agreement with them, by which a credit and an extended time for payment was secured on the one part, and on the other it was agreed that a deposit should be made of bonds to the amount of $194,500, in addition to $43,000 already held, and scrip for paid up capital stock of said Ware River Railroad to an amount of at least $250,000, as collateral for the credit so to be given ; the stock and bonds to be delivered "*pro ratâ* as the rails, chairs and spikes are delivered." Upon completion of the contract, $175,000 of the stock was to be retained by Vibbard. Foote & Co. in lieu of commissions.

---

* COLT, J., did not sit in this case.

Before this contract was executed, it was shown by Smith & Co. to the plaintiff; and Vibbard, Foote & Co. wrote to the plaintiff, reciting its purport as an agreement with Smith "to deliver to your company the chairs, spikes and residue of the rails required to complete your railroad, on receiving from you $194,500 of your first mortgage bonds, and scrip for stock that shall be earned by them under their contract with you, to the amount of $250,000; the same to be forwarded and paid to us *pro ratâ* as the materials are delivered by us;" and adding, "if the above is satisfactory, please confirm your acceptance of the same;" and received in reply a copy of a vote of the directors of the Ware River Railroad, as follows: "At a meeting of the directors of the Ware River Railroad, held on the 13th day of October, A. D. 1871, a majority being present, it was voted that we accept the proposition of Messrs. Vibbard, Foote & Co. as made and contained in their letter directed to Otis Lane, Treasurer, dated Oct. 12, 1871." (Signed) "Otis Lane, Clerk." November 1, 1871, Vibbard, Foote & Co. acknowledge the receipt from the plaintiff of "scrip for stock as stated;" and, in reply to some inquiry or suggestion in regard to the delivery or transfer of title, write as follows: "The rails and spikes and chairs we furnish to Messrs. N. A. Smith & Co. for your road become your property as soon as delivered to them and settled for by you, under the terms of our agreement, and we presume they will convey title promptly; but if you prefer that such transfer should be made by us, we presume they would not object; and as soon as we can see them, will conform to your wishes. As soon as laid upon the road, it is the company's property absolutely."

December 26, 1871, Vibbard, Foote & Co. sent to N. A. Smith & Co. a bill of parcels of the rails now in controversy, to wit, 4190 rails, about 800 tons, being the last required to complete the contract. The bill was made out to "Messrs. N. A. Smith & Co. for Ware River Railroad Co.," "bought of Vibbard, Foote & Co., 40 Broadway. Terms as per contract." The specific iron designated by this bill was imported in the bark Presto, entered in the custom-house at Boston, and placed in bonded warehouse, Damon's Wharf, Charlestown, by Vibbard, Foote &

Co., who took a warehouse receipt therefor in their own name, the duties not having then been paid.

January 3, 1872, Vibbard, Foote & Co. wrote to the plaintiff, " Also we have given him (Smith) invoices for rails and all material we are to furnish your road ; and you will please send us the bonds and certificates of stock due us under our contract with Messrs. N. A. Smith & Co."

January 8, 1872, N. A. Smith & Co. made a transfer of the bill of parcels above mentioned, as follows : " For value received, we do hereby sell and assign, transfer and make over unto the Ware River Railroad Company the within bill and the iron therein mentioned, with full authority to said company to control and use the same as fully as we could do, they having paid the amount of said bill."

In consideration of this transfer, the plaintiff consented to deliver at once the remaining bonds, $120,500, required by the contract of Smith & Co. with Vibbard, Foote & Co. ; and on the same day, in accordance with a vote of the directors to that effect, the plaintiff's treasurer, Otis Lane, inquired of Vibbard, Foote & Co., by telegraph, if he should send by Smith the remainder of the bonds, $120,500, to which they replied in the affirmative.

January 10, 1872, he wrote as follows : " Messrs. Vibbard, Foote & Co. I send by hands of Dr. Smith bonds $120,500, for which please send me a receipt showing that it is in full for bonds to be delivered on account of materials furnished in the name of the Ware River Railroad Company. The $120,900 in stock I will send you as soon as it can be legally issued." To which they replied, under the same date : " Your favor of the 10th (9th ?) inst. with the bonds of your company for $120,500, per hands of Dr. Smith, are received, and the bonds have been placed to credit in full for the balance of bonds due us as collateral under our agreement with N. A. Smith & Co. We shall be glad to receive the certificates for the stock yet due as soon as you can forward it."

January 10, 1872, when the $120,500 in bonds were delivered to Vibbard, Foote & Co. by Smith, one of that firm requested

Smith, "if they did not wish to use the iron at once, to let it lie, as they would not have to pay duties then (when gold was high and money tight);" which Smith reported to the plaintiff.

February 24, 1872, Vibbard, Foote & Co., by letter to the plaintiff, again called attention to the stock, $120,900, remaining undelivered, and requested it to be sent "at your earliest convenience."

February 28, 1872, Lane replies: "They have not as yet earned under the contract sufficient stock so that we can to-day send you the amount your due; still it may be just as well for you, as we shall retain the stock in our hands as it is earned, until the amount due you can be issued according to their contract. Then I will forward you the certificates for the amount."

March 1, 1872, Vibbard, Foote & Co. write in reply: "Dr. Smith informed us when here that the certificate of stock could now be issued, which was our reason for making our request for it. We will see him when next in our city, in regard to the matter."

June 1, 1872, N. A. Smith & Co. had failed to pay their note, given to Vibbard, Foote & Co. for the iron; were of doubtful credit, and in fact insolvent. The plaintiff was also insolvent, had failed to pay the coupons upon its bonds; and the bonds had fallen in market below the price limited for their sale, by the contract between Smith & Co. and Vibbard, Foote & Co.

June 8, 1872, the plaintiff's treasurer, Lane, writes to Vibbard, Foote & Co.: "In ordering forward the railroad iron now laying on the wharf at Charlestown, we found that you have a receipt for the same, so that it will be necessary for you to send us the receipt to be surrendered, or you send me such an order as will answer the same purpose."

To this letter, Vibbard, Foote & Co. made no reply, and did not forward the receipt or an order for delivery of the iron, because, as they testified, "they intended to retain their lien on it until paid therefor."

December 20, 1872, a sale of all the securities in the bonds and stock of the road which they had received was made by Vibbard, Foote & Co. to Chester W. Chapin, with the assent of both the

plaintiff and N. A. Smith & Co., for $179,500. A settlement was thereupon made between Smith & Co. and Vibbard, Foote & Co., by which the proceeds of this sale were applied to the notes of Smith & Co. given for the iron previously delivered and used for the road, leaving a small balance still due, for which Smith & Co. gave a new note. The notes given for the last 800 tons, remaining entirely unpaid, were given up to N. A. Smith & Co.

It appeared that, in the negotiations for settlement preceding this sale, Vibbard, Foote & Co. spoke of this iron as a part of the assets of the railroad company, and its cost was included in their statements made up to show the condition of their accounts with N. A. Smith & Co., and the amount due to them thereon; also that both Chapin and the plaintiff knew that Vibbard, Foote & Co. made some claim to hold it, either as owners, or under a lien for what was due them.

December 21, 1872, Vibbard, Foote & Co. transferred said iron, in bond, to Jay Cooke & Co., to whom a new warehouse receipt was then issued.

December 23, 1872, Jay Cooke & Co. paid the duties on said iron, $11,069.10, and took a delivery order for the same, which they now hold.

Vibbard, Foote & Co. had no notice of the previous transfer from N. A. Smith & Co. to the plaintiff, unless they are chargeable with implied notice from the character of the transactions and communications above referred to.

Subsequently to these transactions, and before bringing suit, the plaintiff tendered to Vibbard, Foote & Co. the balance of stock to which they were entitled by their contract with Smith & Co., which was then worthless, and they refused to receive it.

The report contains various statements concerning the relations and state of account between Vibbard, Foote & Co. and Jay Cooke & Co., who were their bankers, and through whom their importations were made; from which it is claimed that Jay Cooke & Co. held some title or interest, by way of lien or otherwise, before the transfer to them in December, 1872, and that by vir tue thereof the legal possession was in them, and remained in them through the whole period covered by the transactions in

volved in this case. But as Vibbard, Foote & Co., throughout all their transactions, both with the plaintiff and with N. A. Smith & Co., assumed to be the absolute owners of the property contracted for, the rights of the plaintiff ought to be determined, as against them, upon the basis of such assumed ownership. The plaintiff's rights being thus ascertained, the defendants Vibbard, Foote & Co. may be required to make such arrangements as will enable them to comply with the order of the court granting the relief which shall be found to be appropriate as between them and the plaintiff. There is nothing in the case to indicate that Vibbard, Foote & Co. will not be able to adjust their own accounts with Jay Cooke & Co. so as to deliver the iron specifically, should such be the order of the court. In this stage and aspect of the case, therefore, it is not necessary to consider the facts upon which the separate rights of Jay Cooke & Co., or the equities of the plaintiff as against them, might depend. Should it appear that Vibbard, Foote & Co. will be unable to comply with the order of the court, either from want of ability to redeem the iron, or because of the refusal of Jay Cooke & Co. to release it to them, these facts may require to be considered hereafter, with a view to relief against Jay Cooke & Co. and the iron in their hands.

We do not deem the facts relating to the replevin suit and bond material to be considered; because the plaintiff is not entitled to relief in that particular, and apparently has no need of any. If there has been no delivery to the plaintiff upon the writ, as is alleged, there can be no judgment for a return. If there has been such a delivery, there ought to be judgment for a return; because, even if the title passed by the contract of sale, there remained a lien for the price, which entitles the defendants to retain possession. And there is no difficulty in the way of returning the goods and saving the penalty of the bond.

The only questions which require decision now are, 1st. What rights in or to the property passed to or were acquired by N. A. Smith & Co. under their agreements with Vibbard, Foote & Co.? 2d. What further or other rights were acquired by the plaintiff through its agreements and transactions with Vibbard, Foote & Co.?

Upon the first point, we incline to the opinion, that, as between the parties to the contract of sale, the title to the 4190 rails passed to N. A. Smith & Co. The rails were designated and appropriated to the purposes of the contract. They were transported to the place of delivery, and landed upon the wharf. A bill of parcels was sent to the purchasers, and their notes for the price were given and accepted. One thing remained to be done, it is true, on the part of the sellers, before the property could be completely transferred; to wit, payment of the duties. But the request to the purchasers "if they did not wish to use the iron at once, to let it lie," for the convenience of the sellers in paying the duties, acquiesced in by Smith, changed that to a matter of accommodation to the seller, and entitled the purchaser to regard the sale as completed.

The entire amount of collateral securities had not been delivered; but Vibbard, Foote & Co. had entered into arrangements with the plaintiff, with the concurrence of N. A. Smith & Co., by which they were to receive that directly from the railroad corporation. They had accepted the assurance of the corporation for its delivery, and assented to or acquiesced in the reasons assigned for its delay.

For the purposes of this bill in equity, and as against Vibbard, Foote & Co., it may be immaterial whether the title had passed to N. A. Smith & Co. or whether their rights remained in executory contract; because, even if the title had passed, we are of opinion that Vibbard, Foote & Co. still retain a lien upon the iron for what is due to them on account of the purchase money. There has never been a complete delivery. The warehouse receipt was taken in the name of Vibbard, Foote & Co., and has since been held by them or by Jay Cooke & Co. They thereby retained control of the iron; and the insolvency of N. A. Smith & Co. and of the plaintiff corporation, whose stock and bonds constituted the collateral security, and the non-payment by each of their matured obligations, entitled Vibbard, Foote & Co. to refuse to comply with the request of the plaintiff, made by letter of June 8, 1872, to forward the receipt or a delivery order. They were then entitled to resort to and insist upon their lien. *Arnold*

v. *Delano*, 4 Cush. 33. Their rights, in this respect, were not defeated or changed by the transfer, indorsed upon the bill of parcels, without their assent or notice to them. *Naylor* v. *Dennie*, 8 Pick. 198. The plaintiff thereby merely acquired such rights as N. A. Smith & Co. had and could enforce. There was no constructive delivery. N. A. Smith & Co. were incapable of making any delivery, not having the possession themselves. If the plaintiff might then have required the rails to be delivered, under the contract, it did not do so, as no demand for a delivery order and no attempt to obtain actual possession appear to have been made until the default and insolvency of the parties gave to the sellers a sufficient ground for resorting to their right of lien.

Second. It remains for us to consider whether the plaintiff acquired any other or greater rights through its dealings directly with Vibbard, Foote & Co. The proposition made and accepted in view of the contract about to be executed between Vibbard, Foote & Co. and N. A. Smith & Co., manifestly affected only the arrangement for the collateral security ; entitling Vibbard, Foote & Co. to receive the bonds and scrip for stock directly from the corporation ; thus enabling them with safety to deliver the iron to N. A. Smith & Co., for use upon the road, without requiring contemporaneous delivery of the securities. In all other respects, it contemplates no change in the contracts previously negotiated between the parties respectively. The securities are required to be delivered only as they " shall be earned by them " (Smith & Co.) " under their contract " with the corporation. There is no suggestion that the corporation should assume the payment of the cost of the iron. All the subsequent correspondence and conduct of all parties, and especially the bill of parcels and its assignment to the plaintiff, show that the transactions in regard to the sale and delivery of the iron were in the execution of the original agreements ; and that the relation of seller and purchaser never existed and was never understood to exist between Vibbard, Foote & Co. and the plaintiff. Throughout the whole, the plaintiff maintained that no obligation had been assumed by itself to Vibbard, Foote & Co., except to deliver the bonds and stock as

they were earned by N. A. Smith & Co. under their contract with the corporation. On the other hand, Vibbard, Foote & Co., although they recite their contract with N. A. Smith & Co. as an agreement " to deliver to your company," did not, in any instance, recognize any obligation to deliver directly to the plaintiff, or otherwise than through N. A. Smith & Co., and in accordance with their agreement with them.

Whatever rights, therefore, the plaintiff acquired, through its arrangements and dealings with Vibbard, Foote & Co., were equitable rights only; to wit, the right to enforce against that firm their agreement to sell and deliver to N. A. Smith & Co. the stipulated quantity of iron for use upon the road of the plaintiff. The purpose specified in the contract, and the arrangements with the plaintiff in regard to the securities, created sufficient privity to enable the plaintiff to seek relief in equity for protection of its interests; but they did not change the legal relations of the parties to each other in respect to the property which was the subject of the contract. The right of lien of the vendor has not been waived by those arrangements, and is superior to the equitable rights of the plaintiff.

It is contended that as, by the terms of the plaintiff's contract with N. A. Smith & Co., payment was to be made in the bonds and stock of the road, and as Vibbard, Foote & Co., knowing this fact, notified the plaintiff of the invoice they had sent to N. A. Smith & Co., and requested the plaintiff to send them the bonds and stock due under their contract with N. A. Smith & Co., and did receive the full amount of the bonds, which alone proved of any value, they are and ought to be held estopped to deny that there had been a complete sale and delivery of the iron. But the plaintiff also knew that Vibbard, Foote & Co. were to receive the stock and bonds as collateral security only, and not as payment. If any estoppel could arise from these transactions, it would reach no further than to prevent them from denying that there was a completed sale which passed the title and right of present possession. It could not prevent them from availing themselves of the continued control, which they were permitted to retain, for the purpose of asserting their lien, upon the occur-

rence of the subsequent default and insolvency of both the parties upon whose credit the sale was made.

The lien of the seller is to enforce payment of the purchase money ; not merely for the delivery of the security.   The tender of the stock, therefore, would not discharge the lien, even if there were no objection to it on the ground of the lateness of the offer and the changed condition of the corporation.

The sale of all the securities that had been delivered and accepted, with the concurrence of all parties interested, operated only as payment, *pro tanto*, of the debt for the purchase money. It did not otherwise affect the lien of the seller upon the undelivered iron, for the balance of the purchase money remaining unpaid.

Whatever rights Chapin might have against Vibbard, Foote & Co., if he purchased the securities upon their representation that the iron in question belonged to the corporation, the plaintiff cannot avail itself of those rights.   But it is manifest from the report that there was sufficient notice, both to Chapin and to the plaintiff, of the claim which Vibbard, Foote & Co. made to this iron.

It is contended further that, as the bonds and stock were to be delivered "*pro ratâ*, as the rails and chairs and spikes are delivered," the securities were to be apportioned to the debt in its separate parts, and that the proceeds of the sale of the securities must be applied accordingly ; to wit, by distribution upon the whole debt ratably, leaving a small part only of the purchase money of the iron in question remaining due to be enforced under the lien.   We do not understand this to be the purpose or effect of the stipulation relied on.   It prescribes the time and mode in which the security must be furnished by the purchaser ; but does not limit the rights of the seller to hold and apply the same to his debt.   This is manifest from the subsequent provisions of the contract, authorizing sales of the securities and the crediting of the proceeds to the account of the parties generally; and requiring that the remaining bonds, if any, after "said account shall be paid" by sale of bonds or otherwise, shall be delivered back to the purchasers of the iron.

Even if the construction of the contract in respect to the collateral security were as the plaintiff argues, the consequences contended for in regard to the lien would not follow. The lien upon the property sold, for security of the purchase money, does not arise from or depend on the written contract. It rests upon general rules of law, and arises from the relations of the parties and the subject matter of the contract. If not discharged or modified by the express terms of the contract, it attaches to whatever part of the property may remain within the control of the seller, for the whole amount of purchase money of the same sale, remaining due, payable and unpaid ; and even when credit is given, the lien revives upon the insolvency or default of the purchaser, if the property has not previously passed out of his control.

It follows that the plaintiff is entitled to the 4190 rails upon payment of what remains due Vibbard, Foote & Co. of the purchase money under their contract with N. A. Smith & Co. To determine what that amount is, it will be necessary that the case be referred to a master, unless the parties adjust the amount or otherwise dispose of the case.

The number of parties interested, and the complication of their various rights and interests, make it sufficiently apparent that it is a proper case for entertaining jurisdiction in equity.

If the plaintiff shall seek to prosecute the action further, an order may be entered for the appointment of a master to ascertain the amount due under the lien.