SEVERENS, District Judge,
having made the foregoing statement of the facts, delivered the opinion of the court.
It seems clear that the result of the purchase of the Metropolitan Company bonds and stock and the Construction Company stock by Leahy on January 26, 1893, of Lobdell, Farwell & Co., though accompanied by a credit for a part of the price, with an agreement to carry the bonds and stock during the time for which such credit was given, was to pass the title to the bonds and stock to the purchaser, subject, however, to a lien of the vendor for the unpaid purchase price. This lien, however, would be suspended during the time for which the credit was given, and would not attach if the vendor should not still be in possession at the expiration of that time. This lien does not depend upon any express stipulation of the parties that it shall exist, but is implied by law upon principles of natural justice. McElwee v. Lumber Co., 37 U. S. App. 266, 16 C. C. A. 232, and 69 Fed. 302; Hodgson v. Loy, 7 Term R. 440; Bloxam v. Sanders, 4 Barn. & C. 948; McEwan v. Smith, 2 H. L. Cas. 328; Arnold v. Delano, 4 Cush. 39; Railroad Co. v. Vibbard, 114 Mass. 447-458; Welsh v. Bell, 32 Pa. St. 12; Owens v. Weedman, 82 Ill. 409; 1 Jones, Liens (2d Ed.) § 800; 2 Schouler, Pers. Prop. (2d Ed.) § 553; 2 Benj. Sales (Bennett’s 6th Am. Ed.) p. 804. It appears to have been a fact undisputed at the trial that a credit was given on this purchase, though the terms and conditions of the credit were a subject upon which the parties differed.
The mere fact that Lobdell, Farwell & Co. had, in other transactions, acted as Leahy’s brokers in purchasing bonds and stocks from others, did not convert the bonds and stocks of this purchase from Lobdell, Farwell & Co. into the subject of a pledge for the payment of balances due from Leahy on the general account for brokerage transactions; and, in the absence of some agreement between the parties, the relation of the parties with reference to bonds and stocks purchased on this occasion would be that of vendor and vendee, with the incidental rights growing out of that relation in a case where credit is given for the purchase money. If the agreement in respect to the giving of credit was for a period reaching beyond the time when Lobdell, Farwell & Co. finally disposed of the bonds and stocks in question, and Leahy kept up the interest as required by the agreement, and there was no further agreement changing the relations of +he parties, it is manifest that Lobdell, Farwell & Co, had no right *670 to sell the bonds and stocks as they did; and such unauthorized sale would entitle Leahy to treat the sale to him as rescinded, and to recover back what he had paid on the purchase, with interest from the date of payment. Holland v. Rea, 48 Mich. 222-224, 12 N. W. 167; Pollen v. Le Roy, 30 N. Y. 549-557; Fancher v. Goodman, 29 Barb. 317; Rosenbaums v. Weeden, 18 Grat. 793; McClure v. Williams, 5 Sneed, 718; Redmond v. Smock, 28 Ind. 365; Benj. Sales (6th Am. Ed.) §§ 782-795.
But we see no reason to doubt that it was competent for the parties, by further agreement, to impress upon the bonds and stocks in question the character of a pledge, giving to Lobdell, Farwell & Go. a lien for the payment of any balance due them on their general account with Leahy. There is some evidence in the record tending to show that such an understanding was had between the parties. It was affirmed by the plaintiff and denied by the defendant. The determination of the fact is followed by important consequences. If no such an agreement was had, Leahy, as already stated, was in position to treat his contract of purchase as at an end, and to recover back the $2,500 which he had paid, with interest; and, if the facts were as just stated, the result would have been the same if no credit for a definite time had been given, but the price was subject to call, for the subsequent sale finally made by Lobdell, Farwell & Go. was not justified by any proper proceedings taken by them to that end. In such case they were bound to call for payment of the purchase price, and in case of his default notify the purchaser of their intention to sell the property for their indemnity. Benj. Sales, § 794, and pages 775 and 776, Bennett’s note, where the American cases are numerously collected. This they did not do. They called on Leahy to furnish margins on general account, and notified him that if he did not comply they would sell the property upon the footing of a pledge for the whole balance due them. This was a demand and notice wholly unwarranted by such conditions, and furnished no basis whatever for the subsequent sale.
On the other hand, if the parties agreed that Lobdell, Farwell & Go. should hold the bonds and stocks as security for the balance of account upon their dealings with Leahy, as they held those which they had bought as brokers for him, this would constitute a pledge. If they should exercise the rights of a pledgee, they would necessarily waive any lien which might have inured to them as vendors in the sale to Leahy, which would be inconsistent with the pledge, and depend upon the latter’s personal responsibility. But in such case there would be no rescission of the sale, and Lobdell, Farwell & Co. would hold the bonds and stocks as the property of Leahy, subject to the terms and conditions of the pledge. In that state of things, if they disposed of the property in an unauthorized way, they would be liable to the pledgor for its value in an action of trover, or the pledgor might waive the tort and recover the price for which the property was sold. The measure of damages would not be the contract price on the sale to Leahy, which would have become an indifferent matter in respect to such subsequent dealings.
Pursuing the subject further upon this latter alternative, there *671 can be no doubt that the court below correctly held that the sale to Deere on the 18th of August and the subsequent rescission of it were wholly inoperative to devest Leahy’s title. And we are also of opinion that Lobdell, Farwell & Co., by reporting the pretended sale to Leahy, and thereby leading him to suppose that they had made an actual sale of his bonds and stocks, disentitled themselves to make the sales of them which they made in October and December following, without giving him notice of the facts, and of their intention to make those sales. He might then have been in condition, and preferred to redeem the pledge. By their conduct they had led him to suppose that his property was gone, and therefore that he had no occasion for concern about its further disposition. They had apparently exhausted the right to sell founded upon the notice they had given him. Upon any view of the case which can be taken, there can be no question that the sales by Lobdell, Farwell & Co. of Leahy’s bonds and stocks in October and December were without right, and amounted to a conversion. The question is reduced to one of the measure of damages, and that depends upon the determination of the fact whether the parties supplemented the sale of the bonds and stocks of January 26,1893, by the further agreement that they should stand pledged for the general balance of account, or whether the contract of sale remained unaffected by any such supplementary agreement. In the former case, this being an action of assumpsit upon a claim of set-off, the measure of damages would be the sum finally realized by Lobdell, Farwell & Co. upon the sales of the bonds and stocks in October and December, 1893, with interest. In the latter case, the vendor might treat the contract as rescinded, and the measure of damages would be the amount he had paid upon it, with interest. We think the rulings of the court below upon the law of the case were right, and that the results reached by the jury correctly represented the sums for which judgment upon the alternatives of the decisive question of fact should be rendered. But the difficulty is that the court did not submit to the jury the determination of the fact as requested, but assumed that the parties had agreed that the bonds and stocks should be regarded as pledged for the security of the balance of their general account. Upon the evidence, while that conclusion might be justified, there was room for a different conclusion. It was for the jury to determine the question. We think the court erred in not submitting the case to the jury upon this point, and for that reason the judgment must be reversed, and the case remanded. with directions to award a new trial.