## GEORGE W. TODD *vs.* T. B. BISHOP.

Suffolk.   January 15. — 31, 1884.   C. ALLEN & HOLMES, JJ., absent.

The answer to a declaration for money had and received contained a general
denial, and alleged that the defendant had duly accounted for and paid all
moneys ever received by him of the plaintiff. *Held*, that the plaintiff was
entitled, under the Pub. Sts. *c.* 167, § 24, to file a replication, averring that the
defendant had never paid him, and that the accounts rendered were false and
fraudulent. *Held, also*, that the plaintiff was entitled to file interrogatories to
the defendant, under the Pub. Sts. *c.* 167, § 49, relating to the issue raised by
the replication.

If the answer to an interrogatory to a party to an action shows that the interroga-
tory is immaterial and does the party no harm, he has no ground of exception
to an order compelling him to answer.

A deposition of a witness described therein as a resident of another State was
taken in such State, on a commission issuing from a court in this Common-
wealth. At the trial it did not appear that the witness was then within the
Commonwealth. *Held*, that a sufficient foundation had been laid for the admis-
sion of the deposition.

Where a deposition of a witness is taken out of the Commonwealth, on commis-
sion, the omission of the deponent to answer the interrogatories fully does not
necessarily preclude its admission in evidence.

If the defendant in an action, in answer to interrogatories filed by the plaintiff,
has said that he purchased shares of stock of a firm doing an extensive business
in another State, the plaintiff is entitled to put in evidence the deposition of
a member of that firm to the effect that no such transaction is shown by the
books of the firm, although copies of the books are not annexed to the depo-
sition.

A ruling that the plaintiff in an action is not bound to prove all the allegations
of his replication, but only so much as may be necessary to meet the state of
the proof under the answer, furnishes the defendant no ground of exception.

A. employed a broker to purchase certain shares of stock upon a margin, and to
carry them for him. The broker reported that he had made the purchase. On
a decline in value, A. instructed the broker to sell the shares; the broker after-
wards reported that he had done so; and A. paid him the difference between
the purchase price and the sale price, together with interest and commissions.
*Held*, that, if no purchase or sale was in fact made, and the broker simply
assumed the contract himself, A. was entitled to recover from the broker the
money paid him, unless he made the payment with knowledge of the facts.

The fact that a person receives from a broker the profits of a transaction in buy-
ing and selling stocks upon a margin, does not necessarily amount to a ratifica-
tion of another transaction in the purchase and sale of stocks, between the
·same parties, which has resulted in a loss.

CONTRACT, for money had and received, with a bill of partic-
ulars of dates and amounts. Writ returnable to the Superior
Court. The answer was as follows: "The defendant denies
each and every allegation, item, claim, and demand contained

in the plaintiff's writ and declaration. He says that he has duly accounted for and paid all moneys ever received by him of the plaintiff, and he does not owe the plaintiff any sum for any cause whatever." The plaintiff then filed, without obtaining leave of court, the following replication: " And now comes the plaintiff and replies to the defendant's answer as follows, to wit, that the plaintiff engaged the defendant as his agent and broker, and directed the defendant to purchase for the plaintiff certain stocks and bonds, and for that purpose the plaintiff deposited with the defendant the moneys set forth in the plaintiff's declaration filed in this action. And the plaintiff says the defendant did make returns to the plaintiff that he, the defendant, had bought for the plaintiff certain shares of stocks and certain bonds, and the defendant did render to the plaintiff accounts of such alleged purchases, which at the time of the rendition of said accounts, and for a long time thereafter, the plaintiff supposed the defendant had bought, as the defendant represented he had. And the plaintiff further says, that, believing such representations of the defendant as to said alleged purchases to be true, and not knowing the contrary thereof, he gave to the defendant certain orders to sell various stocks and bonds, and the defendant represented and pretended to the plaintiff that he, the defendant, had made the sale as the plaintiff ordered. And the defendant rendered to the plaintiff certain sold bills and accounts of said alleged sales, and pretended and represented that he had made them as the plaintiff ordered, all which representations and pretences were false and fraudulent. And the plaintiff avers that the defendant never at any time made any purchases of stocks or bonds for the plaintiff, nor did the defendant make any sales of stocks or bonds on behalf of the plaintiff, nor did the defendant execute any of the plaintiff's orders; and that all of the defendant's representations and pretences in the premises were wholly false and fraudulent, and were made by the defendant for the purpose of misleading the plaintiff, and with an intention to deceive, cheat, and defraud him; and the defendant never at any time paid to the plaintiff any money, as alleged in his said answer, nor did the defendant ever pay any money for or on behalf of the plaintiff. And so the plaintiff says that the defendant never

in any way accounted to him for said money, or paid the same to or for him, but owes the plaintiff the amount set forth in the plaintiff's declaration."

The plaintiff filed forty interrogatories to the defendant. The defendant answered the first eight interrogatories, but declined to answer the others. The plaintiff then filed a motion that he be ordered to answer them; and the defendant filed a motion to strike out the plaintiff's replication. *Knowlton*, J., overruled the defendant's motion; and ordered the defendant to answer all of the interrogatories except the 9th, and such parts of four others as called for a statement of the contents of a certain certificate of stock. The defendant alleged exceptions.

The case was afterwards tried before *Staples*, J., who allowed a bill of exceptions, in substance as follows:

The plaintiff's attorney, after reading the writ, declaration, and answer, was about to read the plaintiff's replication, when the defendant's counsel objected to the reading thereof, and asked the judge to rule that the replication was not called for by the pleadings, and was irrelevant to the issue, and that the replication should not be read or used at the trial. The judge declined so to rule, but ruled that the replication might be read to the jury as a part of the pleadings.

There was evidence tending to show that the defendant carried on business in Boston as a stockbroker, under the style of T. Brigham Bishop & Co., and that the plaintiff paid to him the several amounts in his bill of particulars set forth, on account of certain alleged stock transactions between the plaintiff and the defendant, concerning the nature and character of which transactions the evidence was conflicting.

The plaintiff also put in evidence, against the objection of the defendant, the interrogatories to the defendant, and his answers thereto, except the 9th, which was excluded. These interrogatories asked whether the defendant bought any shares of stock for the plaintiff, and, if so, of whom they were bought, and at what price; also, whether he had sold any shares of stock for the plaintiff, and, if so, to whom, and at what price; and inquired specifically as to each transaction set forth in the plaintiff's bill of particulars. The 26th interrogatory inquired whether certain stock was listed at any stock exchange other

than the New York stock exchange. The 33d interrogatory inquired how the defendant was paid for certain stock when he sold it, whether "by check or cash. If by check, by whom was it drawn? on what bank did you collect the same? If yea, when, where, and how?" The defendant's answer to the 26th interrogatory was, "I don't know;" and his answer to the 33d was, "I was paid nothing, because the balance was against me on settlement of the difference with the party of whom I purchased."

The purport of the defendant's answers to the other interrogatories was, that he had bought the stocks inquired about for the plaintiff on a margin, and had sold them on his account; but that it was impossible for him to state with certainty of whom he bought any specific lot, or to whom he sold it, as purchases and sales were made of larger lots than the plaintiff's, for other customers, on the same dates, and there was no way of distinguishing between them; that some were bought in Boston, and some in New York; that he thought that most, if not all, of the plaintiff's stocks were bought in New York, and, probably, the greater part of Henry Clews and Company; that the defendant, in filling the plaintiff's orders, bought on a margin, and sold in the same way, receiving or paying the difference between the price at which the shares of stock or bonds were bought, and that at which they sold, as the case might be, with commissions and interest, and having no certificates.

Annexed to the defendant's answers was a schedule of his purchases and sales made on account of the plaintiff.

The plaintiff admitted, on cross-examination, that he never had control of money enough to buy and pay in full for the lots of stock above mentioned; and that he never in fact intended or contemplated doing so, or taking or seeing a certificate thereof, but only intended and desired to speculate for the purpose of realizing the profits accruing upon a settlement of the differences, in case the differences were in his favor at the times of closing the transactions, or to pay the loss, if against him; that he "simply dealt in margins;" also, that, if it were really true that the defendant actually bought the stocks, the result on the settlement would have been exactly the same to the plaintiff as it had already been, that is, that the defendant's

settlements with the plaintiff had been without question based on the actual fluctuations of the several stocks. The plaintiff also testified that he supposed that the defendant held the certificates of the stocks purchased, and was not aware and was not informed that the defendant bought the stocks upon margin ; but this was denied by the defendant in his testimony.

The plaintiff also offered in evidence the deposition of Henry Clews. The defendant objected to said deposition as a whole, and to the several interrogatories and answers therein as immaterial and incompetent, and because no foundation had been laid for said deposition and for the several interrogatories therein, and because the answers were not responsive or complete, and were impertinent ; and also because the deponent testified to the substance of book entries not made by himself, but by other persons. The judge excluded the 11th, 13th, and 15th interrogatories, and the answers thereto ; and allowed the rest of the deposition to be read to the jury. The contents of this deposition sufficiently appear in the opinion.

It was in evidence, and the plaintiff admitted, that the defendant gave to him, and he accepted, at the time of making each and every payment to the defendant, a receipt for each of the several sums of money paid the defendant, each of which receipts expressed that the sum therein mentioned was deposited with the defendant, to be used by him, as margin or collateral security, to protect him from loss in any transaction with the plaintiff, and that, if at any time the said amount should not be sufficient for that purpose, the defendant might close such transactions and sell at the New York or Boston stock exchange any stocks, bonds, and securities held by him for account of the plaintiff.

The defendant testified, and offered other evidence tending to show, that, during the period covered by his dealings with the plaintiff, he actually purchased stocks, of the kinds ordered by the plaintiff, and various other stocks, but in larger quantities than the plaintiff ordered, of Henry Clews and Company, in New York, and of other parties in New York, and that he bought these stocks in his own name, " upon margin " ; that is, upon contracts of precisely the same nature as those between himself and the plaintiff, and informed the plaintiff each time that he

had bought the stock to fill his orders. He testified also, and offered other evidence tending to show, that he paid Henry Clews and Company over $10,000 on various stock accounts.

On cross-examination, the defendant admitted that he was unable to furnish any telegraphic order, letter, or book entry touching the purchase of the said stocks for the plaintiff, stating that he had not kept the same.

The plaintiff made no question, but admitted that the accounts rendered by the defendant, and the settlements made by him of the purchase and sale of stocks, were correct, according to the actual market prices of the several stocks at the several times in question.

The defendant asked the judge to instruct the jury as follows: "1. The plaintiff is bound to prove the allegations of his replication, as well as of his declaration. 2. Upon the plaintiff's evidence, and upon all the evidence in the case, the several contracts between the plaintiff and the defendant were gambling contracts; and the plaintiff cannot maintain his action. 3. The plaintiff is bound to prove that he demanded payment of the several sums sued for before bringing this action. 4. The plaintiff, if entitled to recover at all, can recover only nominal damages. 5. The plaintiff ratified and adopted the defendant's acts by accepting the profits in two of the transactions. 6. It was a sufficient compliance with the defendant's undertaking, if he bought the several lots of stock upon margin, on the plaintiff's account; that is, if he bought them upon contracts of the same nature as those between himself and the plaintiff. 7. Upon the plaintiff's own statements, if believed, as to the nature of his several contracts with the defendant, the contracts were gambling contracts, and the plaintiff cannot recover."

The judge declined to give the first instruction requested; but ruled that the plaintiff was bound to prove the replication only so far as might be necessary to meet the state of the proof under the answer. The second request was refused. The third request was refused; and the judge ruled, that, if the alleged purchases were pretended, it was a fraud upon the plaintiff, and no demand was necessary. The fourth request was refused. The fifth request was refused; and the judge ruled that it was a question for the jury whether the plaintiff, by accepting the

profits in two instances, ratified and adopted all of the defendant's acts. The sixth request was refused; but the judge ruled that it was a sufficient compliance with the defendant's undertaking if he bought the several lots of stock upon margin under the contracts really existing between the parties. The seventh request was refused.

The judge further instructed the jury as follows: " If the plaintiff employed the defendant, as a stockbroker, to buy and carry certain stocks for him, on margin, and the defendant subsequently, from time to time, reported to the plaintiff the several purchases of stocks in question, as made in virtue of such employment, and the plaintiff, believing such purchases to be real, paid the defendant, at his request, original margins, and margins on call thereon, and the purchases so reported were not real, but only pretended and colorable, the plaintiff, on discovery of the facts, not having ratified the acts of the defendant in the premises, may recover in this action the amount of said margins. If the defendant assumed the orders of the plaintiff himself, instead of buying of third persons, this, unless known to the plaintiff, was illegal; the defendant cannot make himself both buyer and seller. If this was the nature of the transactions between the parties, the plaintiff may recover back his margins upon discovery of the facts subsequently to the closing out of the last transaction, but not otherwise. And he certainly cannot recover if he ratified such a mode of executing his orders. If the arrangement between the parties subsequently carried out was that the defendant should buy on margin for the plaintiff stocks which the defendant should himself buy on margin in New York, the plaintiff cannot recover."

The judge also gave an appropriate ruling as to what the law would be, in case the jury found that the defendant executed the plaintiff's orders to buy stocks by himself buying stocks on margin in New York, in his own name, without the knowledge, assent, or subsequent ratification of the plaintiff; and instructed the jury that the main question for them was, whether, in the acts done by the defendant in the premises, resulting in the payment of margins, he did as he was authorized by the plaintiff to do, or whether, having notice or knowledge of what was done, the plaintiff assented to or ratified the same; and that if

either proposition was answered in the affirmative, the plaintiff could not recover.

The judge submitted to the jury the following question in writing, to be answered by them: " Were the several purchases of stocks reported by the defendant to the plaintiff, and mentioned in the bought notes as bought in pursuance of the plaintiff's orders, pretended and colorable purchases only, whereof the plaintiff was ignorant, and remained so until after the final settlement of the transactions?" The jury answered this question in the affirmative; and found for the plaintiff in the sum of $3767. The defendant alleged exceptions.

*N. B. Bryant & J. W. Pickering*, for the defendant.

*C. B. Hibbard*, for the plaintiff.

FIELD, J. By the Pub. Sts. *c.* 167, § 24, a replication is not required except by order of court; but if the answer contains any new matter in avoidance of the action, it "shall be deemed to be denied by the plaintiff," or the court may require the plaintiff to reply thereto; and the plaintiff may, without such order, file at any time before trial a replication to the answer, "stating any facts in reply to the new matter therein." No objection has been taken to the form of the answer. The new matter in the answer is in substance that the defendant had duly accounted with the plaintiff, and had paid him what was found due on accounting. To this new matter the plaintiff had the right to reply, and he replied by stating that the defendant has never paid him, and that the accounts rendered were false and fraudulent. The rulings of the court upon the replication were correct.

The defendant objects to the order of the court that he should answer all of the interrogatories filed by the plaintiff except the 9th and parts of four others. The objection is that these interrogatories relate solely to matters of defence. The plaintiff could only file interrogatories for the discovery of facts and documents material to the support of the suit. Pub. Sts. *c.* 167, § 49. *Wetherbee* v. *Winchester*, 128 Mass. 293. In *Wilson* v. *Webber*, 2 Gray, 558, 561, the court say that, "if a plaintiff, in answer to or avoidance of a defence, should set up any new or distinct matter, it would be competent for him to seek from the defendant a disclosure in support of such new issue." The

new issue set up by the replication in this case was, in substance, that the settlement did not bind the plaintiff, because the defendant had not actually bought and sold the stock for the plaintiff as in his accounts he had represented. The interrogatories were intended for the discovery, under the oath of the defendant, of the alleged fact that he had not actually bought and sold stock for the plaintiff. If the defendant proved that the parties had accounted together, and settled the account, the burden was on the plaintiff to prove that the account was false, and that he had been deceived thereby into the settlement. The interrogatories generally were such that the defendant was properly required to answer them. *Hobbs* v. *Stone*, 5 Allen, 109. *Baker* v. *Carpenter*, 127 Mass. 226. The only objection made in the brief of the defendant to particular interrogatories is to the 26th and the 33d; but the answer to the 26th shows that, if the question was immaterial, it did no harm to the defendant; and the answer to the 33d removes the objection, if there was anything in it, that the interrogatory called for the contents of a check.

The defendant objects to the admission of the deposition of Henry Clews. This was taken under a commission issued by the court, upon interrogatories filed in the clerk's office. The witness is described as of the State, county, and city of New York, and the deposition was taken there. It does not appear that the witness was within the Commonwealth at the time of the trial. This was a sufficient foundation for the admission of the deposition.

The defendant also objects to the interrogatories and answers, but the objection was overruled, except as to the 11th, 13th, and 15th. The defendant in answer to the plaintiff's interrogatories had sworn that he probably bought the greater part of the stock for the plaintiff of Henry Clews and Company, of New York, and annexed a schedule of all his purchases of stock for the plaintiff. The deposition of Henry Clews, a partner in that firm, was taken by the plaintiff, for the purpose of showing that the defendant bought none of the stock specified in the schedule, of Henry Clews and Company. The objection, that some of the answers are not as complete as the defendant desired, would not exclude the deposition. The defendant had

obtained no order from the court that the deponent should answer more fully. It appeared that Clews and Company kept all the necessary books for the transaction of a business so extensive as theirs. Evidence that no transaction such as the plaintiff inquired about appeared in their books was some evidence that no such transaction had taken place with them, if the usage of the firm was to enter all such transactions in their books, and this is implied, if not directly testified to, in the deposition. The books were beyond the jurisdiction of the court, and it was not necessary to annex copies of all the books in order to show that there were no such entries in them. No error in admitting particular interrogatories and answers has been shown.

The ruling that the plaintiff was not bound to prove all the allegations of his replication, but only so much " as might be necessary to meet the state of the proof under the answer," was substantially correct.

It seems unnecessary to consider the remaining exceptions in detail. No error prejudicial to the defendant has been pointed out. The instructions appear to be either correct, or sufficiently favorable to the defendant. There was evidence from which the jury may have found that the agreement between the parties was that the defendant should actually buy stocks for the plaintiff, and they have expressly found that the purchases were pretended and colorable only, and that the plaintiff was ignorant of this until after the final settlement. If the defendant received the plaintiff's money, and did not use it in the manner in which he was authorized to use it, the plaintiff is entitled to recover it.                    *Exceptions overruled.*