HENRY C. HALL, administrator, *vs.* WILLIAM A. PAINE & others.

Suffolk. January 8, 1918. — February 28, 1918.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Stockbroker,* Liability to customer. *Agency,* Ratification or repudiation of act of agent. *Election. Letter. Sale,* Rescission.

One, who had dealt with a stockbroker in transactions carried on upon margins, brought an action against the stockbroker alleging a breach of an agreement to carry certain stock upon margin for him as long as he wished and to deliver to him on demand the same number of shares upon payment of what he might then owe. The action was tried before an auditor and during the course of the hearings the plaintiff learned for the first time that sales of the stock in question were made by the defendant to himself. *Held,* that such sales were a breach of the duty owed by the defendant to the plaintiff and were voidable by the plaintiff.

In order to avoid such sales, it was necessary for the plaintiff to repudiate them after he discovered their voidable character.

If the plaintiff did not repudiate such sales upon learning of their voidable character, he must be taken to have ratified them.

It appeared that, between three and four months before the bringing of the action above described, the plaintiff had written to the defendant a letter demanding a delivery to him of the shares of stock in question "according to agreements previously made with me by" you. At that time the plaintiff did not know that the defendant had taken over any of the shares. The auditor's report was filed five years after the action was begun. After the plaintiff discovered at the trial before the auditor the fact of the voidable sale by the broker to himself, he did not repudiate that sale, but continued to press the action upon the ground upon which he had begun it. *Held,* that neither the letter written by the plaintiff to the defendant three or four months before the bringing of the action nor the bringing of the action could be regarded as a repudiation of the sale; and that, by his conduct after he learned of the voidable character of the sale, the plaintiff must be taken to have ratified that sale.

CONTRACT, with a declaration, as amended after the decision of the case reported in 224 Mass. 62, in three counts, which are described in the opinion. Writ dated November 12, 1907.

The case was referred to an auditor, who filed a report on November 6, 1912, and a supplemental report on April 21, 1913.

The previous trial in the Superior Court is described in the opinion. After the decision of this court, reported in 224 Mass. 62, there was a second trial before *Fessenden,* J., upon the declaration as amended. The evidence at and the course of this trial are described in the opinion. The presiding judge, after the answers of the jury to the special questions described in the opinion, ordered a verdict for the defendants and reported the case to this court for determination, it being agreed that, if the ruling ordering a verdict for the defendants was right, judgment should be entered for the defendants, but, if this court should be of the opinion that that ruling was wrong, judgment should be entered for the plaintiff in such sum as this court might order.

*S. L. Whipple & A. Lincoln,* for the plaintiff.

*R. M. Morse, (W. P. Everts* with him,) for the defendants.

DE COURCY, J. The defendants, a firm of stockbrokers, carried certain stocks on margin for the plaintiff's intestate (herein referred to as the plaintiff), for some months previous to February 24, 1904. On that date a final account was rendered by the defendants to their said customer, and a check for the balance shown due was

sent to and accepted by him. This action was brought November 12, 1907.

The original declaration and the substituted one were framed on an alleged promise by the defendants to carry the Copper Range Consolidated Mining Company stock for the plaintiff as long as he desired, regardless of the state of his margin account, and to deliver the same number of shares to him on demand and on payment of what he then might owe them. While the hearings before the auditor were in progress, and again after his report was filed, the plaintiff added other amendments alleging that certain securities held by the defendants as collateral for his account, at various times, were reported to him as sold; that the reported sales were fictitious, that the defendants still held the securities as his agents, and that he had made demand for their delivery. After a trial in the Superior Court the case came before this court on a report. *Hall* v. *Paine*, 224 Mass. 62.

The decision then rendered disposed of the plaintiff's claims based on the alleged special agreement to carry shares of Copper Range Consolidated Mining Company stock, and those based on the sales of stock by the defendants as brokers for the plaintiff to themselves as brokers for other customers. At the last trial in the Superior Court the jury specially found that certain shares of Copper Range were not actually sold by the defendants, on the stock exchange or elsewhere, on December 15, 1902, on August 14, 15 and October 14, 1903, and on February 23, 1904. To the question "Did the plaintiff rescind, avoid or repudiate the sales, if so when?" they answered, "Yes, December 14, 1905." This answer was not warranted by the evidence, and was set aside by the presiding judge; and a verdict was directed for the defendants.

As was pointed out in the earlier decision, under the long recognized rule in this Commonwealth the title to the stocks now in controversy, which the defendants bought for the plaintiff to be carried on a margin, was in the defendants, as between the parties. The plaintiff was entitled to receive them only upon paying or offering to pay for them. In the first count of the declaration as finally amended it is expressly alleged that by February 24, 1904, the defendants had reported the entire amount of said securities to have been sold. On this record it must be assumed that they were not sold on the exchange, but were taken over by

the defendants, for their own account. This was a breach of the duty they owed the plaintiff; and the rule of damages is the same whether this taking over of stocks already in their name be treated as a sale or as a conversion. Such attempted sales to themselves, even though made at the market value of the stocks, were voidable by the plaintiff, at his election. He was regularly notified of each sale as made. At the time of the hearings before the auditor, at the latest, he knew that these sales in controversy were made by the defendant brokers to themselves. Unless he saw fit to repudiate them after he discovered their voidable character, he must be held to have ratified them. It was with reference to these transactions that the court said in the earlier opinion: "So far as the defendants bought stocks for themselves which as brokers they were selling for the plaintiff, these sales were at least voidable and may be treated as such by the plaintiff." And it was said further: "The plaintiff was at liberty to set aside such sales within a reasonable time after he knew of them and demand the return of the stocks. The trial seems to have proceeded without objection, under amendments to the declaration, upon the theory that he had elected to set aside these sales and demand the return of the stocks. The correct rule of damages to be applied, if the plaintiff should prove that the defendants made sales of stock to themselves, either real or fictitious, is that the plaintiff may recover the difference between the value of the stocks when sold and their value when the sales were made known to and repudiated by him, together with interest from that date." *Hall* v. *Paine,* 224 Mass. 62, 74, 77. *Todd* v. *Bishop,* 136 Mass. 386. *Rice* v. *Winslow,* 180 Mass. 500, 503.

The final account between the parties had been closed February 24, 1904, and a balance of $784.72 was then paid to the plaintiff in settlement. The only demand made by the plaintiff before bringing this action was in his letter of July 29, 1907. This letter requested the defendants to deliver to him fourteen hundred and fifteen shares of stock of the Copper Range Consolidated Mining Company, "according to agreements previously made with me by your firm." It is clear from the record that the "agreements" referred to were the alleged oral promises to carry shares of said Copper Range stock for the plaintiff as long as he wished them to, regardless of the state of his margin account and of the market. It was

this alleged agreement on which he based his original declaration, and to which he testified before the auditor and in the Superior Court. The breach on which he relied was not the taking over of some of the stocks at the market price by the defendants while acting as his agents, but the sale of any of them, on the exchange or elsewhere, without his consent or order. In fact at the time said demand was made he did not know that the defendants had taken over any of these stocks. And when, at the hearings before the auditor many months afterwards, the opportunity was afforded him of discovering the facts, and even after the auditor found that the alleged agreement was not proved, the plaintiff still persisted in his original claim; he gave no notice that he repudiated or rescinded the sales to the defendants, and made no demand for the stocks acquired by them.

The demand made in July, 1907, in support of the specific alleged agreement cannot be used in this proceeding to support a cause of action of whose existence the plaintiff was ignorant until some three years after the writ was brought. *Todd* v. *Bishop*, 136 Mass. 386, 392. *Learned* v. *Foster*, 117 Mass. 365. *McKinley* v. *Warren*, 218 Mass. 310. Nor can the bringing of the action be regarded as an avoidance of the sales made to the defendants. The plaintiff now bases his claim on the assumption that the defendants had a right to sell the stock, in consequence of the plaintiff's failure to furnish on request a reasonable amount of margin to protect his account. The sales made to themselves as brokers for other customers were valid. Those made to the defendants for their own account might have been rescinded or repudiated by the plaintiff on learning the facts, apparently in 1910. He took no steps to avoid them and to demand the stock, as he might have done. This action was brought three years before, for a different cause, and when the plaintiff was not aware that the sales now relied upon had been made and had not attempted to repudiate them. For that reason the presiding judge rightly directed a verdict for the defendants. See *Bassett* v. *Brown*, 105 Mass. 551; *Hall* v. *Paine*, 224 Mass. 62, 76, 77.

This conclusion renders it unnecessary to consider the other exceptions taken by the defendants. In accordance with the report the entry must be

*Judgment for the defendants.*