JAIRUS E. CLARK, assignee, *vs.* NORTHAMPTON NATIONAL BANK.

Hampshire.    September 19, 1893. — October 21, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Insolvent Debtor — Deposit in Bank holding Debtor's Promissory Note — Set-off — Preference — Action.*

A bank is entitled to set off the amount of a promissory note held by it against the balance due, on account of money deposited in the bank by the maker of the note, at the time insolvency proceedings are begun by the latter, unless deposits made after the date when, to the knowledge of the bank, he is unable to meet his obligations are made in violation of Pub. Sts. c. 157, §§ 96, 98, relating to preferences; and in an action by his assignee in insolvency to recover such balance the question whether they are so made is one of fact, to be found by the court trying the case without a jury.

If the maker of a promissory note held by a bank with which he has kept an account, who is insolvent to the knowledge of the bank, continues to deposit money in the bank and to draw checks against his deposits, upon the understanding between them that the relation of the parties is to remain the same as

before his insolvent condition, and the bank does not attempt to apply the balance due on the deposits to the payment of the note until after insolvency proceedings are begun, the assignee in insolvency cannot maintain an action against the bank to recover such balance, which is less than the amount of the note.

CONTRACT, by the assignee in insolvency of the Florence Tack Company, upon an account annexed, and for money had and received. The defendant filed a declaration in set-off for the amount of certain promissory notes made by the Florence Tack Company, and held by the defendant. Trial in the Superior Court, without a jury, before *Aldrich*, J., who allowed a bill of exceptions, in substance as follows.

The action was brought to recover the amount deposited by the Florence Tack Company with the defendant between March 8 and the time of the filing of the petition in insolvency, on April 25, 1892, after deducting the sums withdrawn on checks against such deposit. The defendant sought to set off or apply against said balance certain overdue notes which the defendant held against the Florence Tack Company on April 25, amounting to a sum largely in excess of said balance.

On March 8, 1892, the Florence Tack Company notified the defendant and its other creditors as follows : " The Florence Tack Co. find themselves unable to meet maturing obligations, and its paper goes to protest to-day. The creditors are hereby requested to meet at the Mansion House in Northampton, on next Friday, March 11th, at 2 o'clock P. M., to consider and determine what shall be done."

On March 11, a large number of the creditors, representing from three fourths to seven eighths of the amount of indebtedness, met at the place designated in the notice, the defendant being represented by its attorney. The treasurer of the corporation gave a list of the creditors, with the amount due each creditor, and stated that he could not give an exact list of the assets because no inventory had been taken, and that the corporation could not pay its debts. A committee of three creditors was chosen by the meeting to investigate the affairs of the corporation and report what had better be done to a future or adjourned meeting. The committee did not take possession of the property, but the same remained in the possession of the treasurer, and under his control.

At the adjourned meeting, on April 8, 1892, the defendant being represented by its attorney, the committee reported that they had had an inventory taken, and that the liabilities exceeded the assets by about $44,000. The corporation made an offer of compromise of ten cents on the dollar, and the meeting was adjourned for one week to consider this proposition. At the meeting of April 15, the offer of compromise was rejected, and the corporation, by its treasurer, agreed to go into voluntary insolvency. No further action was taken by the committee, and on April 25 the corporation filed its petition in insolvency, and the plaintiff was subsequently chosen its assignee, and qualified as such. On May 13 the plaintiff made a written demand on the defendant for the balance on deposit, namely, $1,708, and also presented his check as assignee, payable to himself, for said balance, but the defendant refused to pay the plaintiff, and when asked the reason claimed the right to set off the corporation's indebtedness to the bank against said balance.

After the committee was chosen at the meeting of March 11, no new goods were manufactured nor any new stock bought, but the treasurer of the corporation testified that the committee said, " We had better go on and finish up all the goods we can, and fill all orders we can, and pay the help, and go ahead and act in that way. It was considered better to have the assets in cash." The deposits made from March 8 to April 25 were in the name of the Florence Tack Company, and were the sums received for sales of the corporation's goods by its treasurer. The treasurer went over the corporation's books and showed the committee the accounts that were due, and wanted to know what he had better do. The committee told him to send and get the accounts in as fast as he could. He asked where he should deposit, and the committee said in the Northampton National Bank; that they knew of no reason for changing. In reply to this question to the treasurer, " Did you draw those checks under the instructions and with the consent of the committee ? " he answered, " They told me to deposit the money in the Northampton National Bank, and pay off those who were unpaid." The treasurer testified : " I told Mr. Whittlesey, when I made the first deposit after the meeting, that the committee had told me to deposit the money there and pay off the help." The com-

mittee did not know that he had drawn checks for other purposes until told so by him on or after the meeting of April 15, and did not know of a $500 check for attorney's retainer until the assignee made the written demand on the defendant. During the interval between March 11 and April 25, the treasurer drew out by checks sums for various purposes, such as for pay-rolls, insurance, some small private debts, $40 for insolvency deposit, and $500 for retainer of the attorney for proceedings in the insolvency court. The defendant's cashier on one occasion asked the treasurer of the corporation why he had drawn checks not relating to the pay-rolls, to which the latter replied that these checks were charged to him, and that he did not suppose the committee had any real authority in the matter.

The defendant's cashier testified that he received the notice, dated March 8, of the meeting to be held on March 11, but did not remember the date of its receipt; that deposits were made by the treasurer of the corporation in the same manner on and after March 11 as before that date, and they were credited on the same account they had been previously credited upon; that the defendant never received any notice from the committee, or the treasurer of the corporation, of any difference in the method of charging the deposits after March 8 from that used before; and that before March 8 he supposed the corporation to be solvent; but on cross-examination he testified that in February the financial situation of the corporation was poor, and that he might have had serious doubts about its ability to pay its notes which had been discounted.

All the checks drawn by the treasurer of the corporation down to April 25 were paid by the defendant in full. None of the checks were received by the defendant in payment of any of its claims against the corporation, nor was any part of them applied in payment or reduction of the corporation's indebtedness to the defendant until after the latter had been notified of the corporation's petition in insolvency.

The plaintiff requested the judge to rule as follows:

" 1. On all the evidence, the plaintiff is entitled to recover.

" 2. If the Florence Tack Company, being insolvent, deposited the cash declared for with the defendant, who was then a creditor on notes overdue, the latter having reasonable cause to

believe said company insolvent, such transaction would constitute an unlawful preference, and the plaintiff can recover in this action.

" 3. If the defendant by its attorney attended the meetings of the creditors of the Florence Tack Company held before the filing of the petition of said company in insolvency, and participated in or assented to the action taken at the meetings for the purpose of ascertaining the value of and collecting the assets of said company and winding up its business, with a view to a compromise or to ultimate insolvency, and, in carrying out said purpose and understanding of the creditors, the cash declared for was deposited with the defendant, the said deposits were not made in the usual course of business, and cannot be set off in any form in this action.

" 4. The knowledge on the part of the defendant that the Florence Tack Company was insolvent, and the conduct of the defendant in taking part in and assenting to the proceedings by the company's creditors in reference to its affairs and their own interests before the filing of the petition in insolvency, are such as, with all the circumstances and facts of this case, to create and constitute in law an implied or a constructive trust in the defendant for the benefit of the creditors of the Florence Tack Company, and the assignee can recover the deposits so made and declared for in this action."

The judge refused to give the rulings requested; and found, upon the evidence, as follows :

" 1. The deposits of the Florence Tack Company between March 8 and April 25, inclusive, were made in the usual manner, and no special trust attached to them. The defendant became the debtor of the company to the amount of these deposits, and the company by its treasurer continued to draw checks upon the defendant as it had before done, and the defendant paid all such checks until the first notice of insolvency proceedings on the part of said company.

" 2. The defendant did not receive the deposits in payment of the company's indebtedness to the defendant, and there was no unlawful preference of the defendant as a creditor of the company. The defendant did not apply or attempt to apply the balance due on the deposits to the indebtedness of the company

to the defendant until after the commencement of proceedings in insolvency by the company.

" 3. The defendant had no agreement or understanding with the provisional committee which changed the character of the deposits made by the company after March 8."

The judge found for the defendant; and the plaintiff alleged exceptions.

*T. G. Spaulding*, for the plaintiff.

*C. N. Clark*, for the defendant.

FIELD, C. J.   The amount of the notes is to be set off against the balance due on account of the deposits at the time of the commencement of the proceedings in insolvency, unless the deposits made after March 8, 1892, are to be considered as made with a view to give a preference, or to effect a fraudulent transfer of property contrary to the statutes relating to insolvency, or as made upon a trust for creditors.   *Demmon* v. *Boylston Bank*, 5 Cush. 194.   Whether these deposits were made in violation of either § 96 or § 98 of Pub. Sts. c. 157, was a question of fact, and the court, trying the case without a jury, has found that they were not so made.   *Leighton* v. *Morrill*, 159 Mass. 271. On the facts found by the court, the rulings on this part of the case were right.

We are not certain that the exceptions set out all the evidence. Enough however is recited to show that the plaintiff had some ground to contend that after March 8 the bank knew that the business of the Florence Tack Company was being carried on with a view of converting its assets into cash for the benefit of its creditors, and that the company must either effect a compromise with its creditors or go into insolvency.   The money received after March 8 ought perhaps to have been specially deposited, but this was not done, and the account of the Tack Company with the bank continued unchanged in form.   There is evidence that the defendant's cashier understood that, after March 8, checks were to be drawn only to " pay the help " of the company, but there is also evidence that checks were in fact drawn for other purposes, and were paid.   There appears to be no doubt that the officers of the bank knew of the insolvency of the company on March 8.   Still, it is a question of fact whether the transactions between the company and

the bank after March 8 were had under an implied contract or understanding on the part of both parties different from that which existed before. The court has, in effect, found that after March 8 the money continued to be deposited and checks to be drawn upon the same understanding as that which existed before that time, that is, upon the understanding that the relation of the parties continued to be the ordinary one of a depositor with a bank of discount and deposit. We cannot say, as matter of law, that this finding was wrong. It was for the court below to draw the proper inferences of fact, and the exceptions disclose no error of law.          *Exceptions overruled.*