PHILIP S. DEANE & another *vs.* AMERICAN GLUE COMPANY.

Suffolk.    November 16, 1908. — January 6, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Agency*, Existence of relation, Scope of authority or employment, Undisclosed. *Evidence*, Admissions and confessions. *Practice, Civil*, Exceptions. *Conversion. Set-off*.

Where one, who is engaged in business as an " electrical contractor " and who never has dealt in glue, at the suggestion of a glue broker and jobber enters into an arrangement whereby the broker is permitted to use the name and credit of the " electrical contractor " in the purchase and resale of glue to be invoiced and billed in the name of the " electrical contractor," who is to receive therefor a commission of two and one half per cent, and the broker, with the knowledge and consent of the " electrical contractor," fixes the price at which the glue shall be sold, makes sales and collects the proceeds from the purchasers, the broker must be deemed to be the agent of the " electrical contractor " in the transactions as to glue.

The mere fact that one writes a letter upon the letter paper and under the letterhead of a corporation is no evidence that while so doing he is acting as an agent of the corporation.

The mere fact that a person wrote a letter upon the letter paper and under the printed letterhead of a corporation does not make statements contained in the letter admissible as admissions binding upon the corporation in the absence of further evidence showing that the person who wrote the letter was an agent of the corporation with authority to make such admissions.

Where a bill of exceptions states an exception to the exclusion of a letter offered as evidence, but does not set forth either the letter or a description of its contents or the purpose for which it was offered, the exception cannot be sustained since there is nothing in the record to show that the excepting party was harmed by the exclusion of the evidence.

At the trial before a judge without a jury of an action of tort for the conversion of a certain lot of glue, it appeared that the plaintiff, an " electrical contractor " who never had dealt in glue, made an arrangement with one who was a glue broker and jobber whereby the latter was permitted to use the plaintiff's name and credit in the purchase and resale of glue to be invoiced and billed in the plaintiff's name, and the plaintiff was to receive therefor a commission of two and one half per cent. Upon receipt of the invoice and bill of lading of the glue in question, the plaintiff indorsed it to the defendant and delivered it to the broker for delivery to the defendant, and there was evidence tending to show that the plaintiff also at the same time sent to the defendant a bill for the glue. Evidence of the defendant tended to show that the bill of lading which he received was in the name of the broker and nowhere contained the name of the plaintiff, and that the defendant never received any bill from the plaintiff and did not know that the plaintiff was interested in the transaction. The plaintiff contended that the broker procured the glue from him by fraud, and that therefore

the defendant had no title to it. The judge found generally for the defendant and the plaintiff alleged exceptions. *Held*, that the exceptions must be overruled, since the judge must have found that, in making the sale to the defendant, the broker acted as agent for the plaintiff within the scope of his authority, and therefore title to the glue passed to the defendant.

Where, acting on behalf of another, a glue broker and jobber sold glue to one, who did not know and had no reason to know that the broker and jobber was acting otherwise than on his own behalf and to whom the broker and jobber was indebted in a sum larger than the purchase price of the glue, the broker's principal cannot recover the price of the glue from the purchaser, since he is subject to the equities in the purchaser's favor which existed between the purchaser and the broker and jobber, and the purchaser has a right to set off the broker's debt to him.

CONTRACT OR TORT. Writ in the Superior Court for the county of Suffolk dated September 19, 1907.

The first count in the declaration was on an account annexed containing charges for various quantities of glue, and, accompanying each such charge, an item, "2½% for buying."

The second count, "for the same cause of action as count one," alleged that the arrangement described in the first paragraph of the opinion was made by the plaintiffs with the defendant through its agent, one Cummings, and that the plaintiffs sought recovery according to the account annexed to the first count.

The third count was for interest.

The fourth count was in tort, and alleged that the defendant converted to its own use certain lots of glue described in the previous counts, the property of the plaintiffs. Subsequent counts in tort alleged separately the conversion of each of such lots of glue.

The case was tried in the Superior Court before *Aiken*, C. J., without a jury. Besides the facts stated in the opinion, the evidence introduced by the plaintiffs tended to show that certain qualities of glue could not be purchased by the defendant directly from the manufacturers, since manufacturers sold only to consumers of glue and the defendant was a dealer in glue; that Cummings, a glue broker and jobber, induced the plaintiffs, who were electrical contractors, to allow him to use their firm name for the purchase of glue to be resold by them to the defendant; that the plaintiffs were to sell only to the defendant; that Cummings procured the lots of glue which were the basis of the action from the manufacturers and they were invoiced to

the plaintiffs; that the plaintiffs then, at the request of Cummings, indorsed the bills of lading to the defendant and delivered them to Cummings, at the same time mailing to the defendant a bill for glue, a duplicate of which was given to Cummings; that such lots of glue were received by the defendant on March 15, 18, April 27, May 1, and 8, 1907, the plaintiffs' instructions to Cummings being that they should be sold on sixty days' time; that on May 11, 1907, Cummings delivered to the plaintiffs a check of the defendant payable to him and by him indorsed to them, the amount of which exactly corresponded to the price of the first two lots of glue, and that no other payment for any of the glue was made to them excepting a payment on June 22, 1907, which was made after a controversy had arisen between the plaintiffs and the defendant, and was for the last lot of glue received by the defendant on May 8, 1907, for which it admitted it had received a bill from the plaintiffs at the time of delivery. In the direct examination of the plaintiff Deane, the presiding judge asked him, " Now, the question is, who made the collections? ", to which he made answer " George W. Cummings."

The defendant's evidence tended to show that no bill had been received by it from the plaintiffs for any of the glue excepting the last lot, that the invoices which it received were in the name of Cummings himself, that none of its officers or agents had any knowledge or means of knowing that Cummings was acting for the plaintiffs in the transaction, that other checks had been given by it to Cummings on March 18 and May 7, and, further, that Cummings was indebted to it in a sum greater than that which the plaintiffs sought to recover.

At the close of the evidence the plaintiffs requested the judge to rule as follows:

1. On all the evidence the plaintiffs are entitled to recover.

2. The title to the property alleged to have been converted never passed to the American Glue Company, but remained in the plaintiffs if they were induced to part with the bills of lading by the fraudulent representations of Cummings.

3. The acts of Cummings in making the alleged sales of the property to the American Glue Company gave that company no rights in the property against the plaintiff.

4. The acts of the American Glue Company in receiving

the property from the railroads and selling it were acts of conversion.

5. No demand by the plaintiffs on the defendant was necessary in this case before bringing action.

6. If the plaintiffs in fact honestly and in good faith dealt with Cummings and regarded him as the agent or employee of the defendant, the facts in the case show that the plaintiffs were justified in giving credit to the defendant, and the latter are liable for all the goods sold.

The judge refused so to rule, and found generally for the defendant. The plaintiffs alleged exceptions.

*W. F. Prime*, for the plaintiffs. .

*B. L. M. Tower*, (*S. H. Pillsbury* with him,) for the defendant.

BRALEY, J. It was undisputed that the plaintiffs were copartners doing business as " electrical contractors," but never had dealt in glue until, at his suggestion, they entered into an arrangement or contract with one Cummings, who was a glue broker and jobber, whereby they permitted him to use their name and credit in the purchase and resale of glue to be invoiced and billed in their names, in consideration that on all sales they were to receive a commission of two and one half per cent. In acting for them, it further appears, that with their knowledge and assent he fixed the price for which glue should be sold, made sales and collected the proceeds. Having been clothed with this authority, he must be deemed the agent of the plaintiffs.

The averment in the second count of the declaration, that Cummings acted as the agent of the defendant, is wholly unsupported by any evidence, for the letter alleged to have been written by him on paper bearing the defendant's letterhead, unless connected with the company, was not evidence which would support a finding that he was acting for it. It is familiar law, that unless some proof of agency is offered, the mere declarations of one who assumes to be an agent cannot be admitted to bind his alleged principal. A foundation must first be laid from which such a relation can be inferred, and from whom he procured the letterhead is not shown.

The admission of the letterhead, and of the fact that the letter paper of the defendant was used, at least was sufficiently favorable to the plaintiffs. The plaintiffs do not show that they are

aggrieved by the ruling excluding its contents, as neither the text of the letter nor the purpose for which it was offered is stated. *Baker* v. *Gerrish,* 14 Allen, 201.   *Phenix Nerve Beverage Co.* v. *Dennis & Lovejoy Wharf & Warehouse Co.* 189 Mass. 82. *Magnolia Metal Co.* v. *Gale,* 191 Mass. 487.

The agent, having been clothed with these powers, entered into negotiations with the defendant for the sale of the parcels or invoices of glue described in the several items of the account annexed, of which only the proceeds of the sales under the tenth and thirteenth items were finally in issue at the close of the evidence.   If there was testimony which would justify a finding, that at the time of purchase, without information or knowledge of his agency, the defendant dealt with Cummings, the title legally passed, and it is not liable to the plaintiffs either in tort for its conversion or in contract for the price, except so far as the proceeds, if at all, may have exceeded any liability of their agent to the company.

In making the sales in suit, the agent, although he did not disclose his agency, did not act in excess of the scope of his employment.   If, for their own protection and under the arrangement with him, the invoices ran in the plaintiffs' firm name and ordinarily would have to be properly indorsed by them before the railroad company would deliver, yet, the sale having been effected by their representative, there was no conversion by the defendant, and no question of the election of remedies or of ratification, where there has been an unauthorized sale of the owner's property to a third person, is presented.   *Metcalf* v. *Williams,* 144 Mass. 452.

The plaintiffs testified that they never purchased any glue except for the purpose of reselling it to the defendant, and there seems to have been no doubt, as stated by the judge and admitted by its counsel, that the plaintiffs believed they were selling the glue in suit directly to the company when they indorsed to the company's order the bills of lading or invoices and gave them to Cummings, after he reported that the sale had been negotiated.   It would seem to be plain that, according to the common course of business, the carrier would not have delivered the glue to the defendant under this indorsement without its order.   By what means he either used or suppressed

these invoices, and invoiced the merchandise in his own name to the company, as testified by its general manager, is not stated. If the testimony of the plaintiffs and the general manager, who was called as a witness by them, is believed, that the invoices must have been manipulated in some way, is evident.

But, even if it would have been possible to find that at the time of sale duplicates of some of the invoices of the sales in suit, properly addressed and mailed, had previously been received, or that, from the conversation which the plaintiffs testified to having had with the general manager the defendant was put upon its inquiry and might have been charged with knowledge that the plaintiffs were the principals,* these matters were purely questions of fact. The credibility of the witnesses also was solely for the trial court. In view of the form which the transaction finally assumed, and the uncontradicted testimony of the general manager, that Cummings invoiced all goods in his own name to the company, and brought to him the bills of lading, we cannot say as matter of law that the general finding in favor of the defendant, which of course must have rested upon a finding that it did not know or have any reasonable cause to apprehend that the plaintiffs were the principals, was unwarranted.

If, while sustaining the relation of agent to the plaintiffs, he made the sales for value to the defendant, who dealt with him without knowledge of his agency, then the plaintiffs, as undisclosed principals seeking to avail themselves of the benefit of the contract, are subject to any equities in its favor which existed between the company and Cummings. *Cushman* v. *Snow*, 186 Mass. 169, 174, and cases cited. The defendant, therefore, had a right to apply in set-off the amount of the sales

---

* The plaintiff Deane testified as to this conversation, which he stated occurred early in June, 1907, as follows: " We went down to his office and told him who we were, and he granted us an interview and told us that he did not — showed us this other bill, this last bill, and said he would pay for that, and the others he claimed to have paid Mr. Cummings for, and said that he had paid them, and in the course of the conversation he admitted having received bills from us, but he had turned them over to Mr. Cummings because Mr. Cummings told him they were paid, we had no business to bill that way; as I understand, he had turned them over to Mr. Cummings his sayso, ' That is all right; those have been paid; I have paid them since they were mailed,' or, ' They shouldn't have mailed to you.' "

against his indebtedness, and, when this had been done, no balance remained.   The first request, that on all the evidence the plaintiffs were entitled to recover was properly refused, and the other requests became immaterial under the general finding, to which, for reasons stated, the plaintiffs' exception cannot be sustained.   *American Malting Co.* v. *Souther Brewing Co.* 194 Mass. 89.

*Exceptions overruled.*