## A. Pizer *vs.* William Hunt & another.

Suffolk.   November 11, 1924. — January 9, 1925.

Present: Rugg, C.J., Braley, Pierce, Carroll, & Wait, JJ.

*Stockbroker,* Two accounts of same customer, Assignment by customer. *Assignment. Novation. Practice, Civil,* Amendment. *Constitutional Law,* Due process of law.

At the hearing of an action of contract by a judge without a jury, it appeared that the defendants were stockbrokers, that a customer who had with them two margin accounts, denominated No. 1 and No. 2, assigned to the plaintiff all his right, title and interest in certain enumerated stocks as "credited by the defendants," which stocks were those carried by the defendants in the No. 1 account, went with the plaintiff to the defendants' place of business, notified them that he desired to transfer his No. 1 account to the plaintiff and then signed and delivered to the defendants an order, "Please transfer my account to" the plaintiff; that the defendants assented to and accepted the assignment and caused the plaintiff to sign a registration card containing among other matters an agreement by the plaintiff as to rights of the defendant, in which repeatedly occurred the words, " my account "; that the defendants closed the No. 1 account on their books and opened a new account in the plaintiff's name; that at the time of the assignment to the plaintiff, there was a substantial equity in both accounts; that during the succeeding three months the plaintiff sold most of the securities assigned to him and then, at a time when there was a balance to his credit in the account assigned to him but in favor of the defendants in the No. 2 account, he demanded payment and transfer to him of the cash and securities remaining in the No. 1 account.  *Held,* that a finding was warranted that there was a complete novation between the plaintiff, his assignor and the defendants, whereby account No. 1 was discharged of all liens, save such as pertained to the charge of the defendants against the securities assigned to the plaintiff and enumerated in the assignment and the account, and whereby the plaintiff became charged with, and the plaintiff's assignor became discharged from, the debit obligations of that account only.

The declaration in an action of contract against a firm of stockbrokers was based upon an assignment to the plaintiff of an account of the assignor with the defendants.  At the hearing by a judge without a jury, it appeared that the account assigned was one of two, in both of which the assignor had agreed that his securities should be subject to hypothecation or sale by the defendants to liquidate debit balances against him, and that the defendants refused to pay the plaintiff a balance to his credit on the assigned account because there was a balance to their credit on the second account.  The judge found, on

evidence warranting the finding, that at the time of the assignment a complete novation occurred and that the plaintiff took the first account free from a lien to which it had been subject in favor of the second account. After the finding and the filing of exceptions by the defendant, the plaintiff was allowed to amend his declaration so that it was based upon the novation found by the judge. *Held,* that

(1) The judge had jurisdiction and power to allow the amendment after trial and finding;

(2) As matter of law, there was no violation of the 14th Amendment to the Federal Constitution;

(3) No error in the allowance of the amendment was shown.

CONTRACT, against William Hunt and J. Lucius Ellis, doing business under the name of Hunt, Ellis and Company, for a balance alleged to be due to the plaintiff upon an account carried with the defendants as stockbrokers. Writ dated May 9, 1921.

The action was referred to an auditor. Upon the coming in of the auditor's report, it was heard by *Qua,* J., without a jury. Material evidence is described in the opinion. The judge found the following facts:

"On January 30, 1920, before the assignment from Gash to the plaintiff, the situation was that Gash had two separate and distinct contracts with the defendants, under the first of which, — the P. E. Gash account, hereinafter referred to as account number one, — Gash was entitled to receive from the defendants the securities carried by them on that account upon payment of the balance due on that account; and under the second of which contracts, — hereinafter referred to as account number two, — Gash was entitled to receive from the defendants the securities carried by them on account number two upon payment of the balance due on that account. The title to the securities themselves under the Massachusetts rule was in the defendants and Gash had no property rights in them: he had only his contractual rights against the defendants.

"On January 31, 1920, Gash and the plaintiff came to the defendants' place of business and Gash transferred his account number one to the plaintiff. Thereupon the defendants assented to the assignment, accepted Pizer as their customer and thereafter in their bookkeeping, in rendering

their monthly accounts and in every other respect, treated Pizer as the person with whom they were dealing so far as concerned account number one and the securities carried on that account. On February 4, the defendants accepted a deposit of $100 on this Pizer account. It is also significant that on January 31, the defendants took from Pizer a 'Customers Registration Card,' Exhibit 19, exactly similar to that which had been required from Gash when he opened his account. On all the evidence I find that on January 31, 1920, the defendants entered into a new contractual relation with the plaintiff under which the plaintiff became their margin customer and under which they agreed to deliver to the plaintiff the securities carried in account number one upon payment of the balance due, as shown by that account. On April 30, when the plaintiff made demand, nothing was due to the defendants on this account and it was their duty to deliver the securities to the plaintiff and to pay to him the balance which the account showed in his favor."

There was a finding for the plaintiff in the sum of $4,058.85. The defendants alleged exceptions.

After the filing of the defendants' bill of exceptions and before it was allowed, the plaintiff filed and the judge allowed the amendment to the declaration described in the opinion. The defendants also alleged exceptions to such allowance.

*P. H. Kelley,* for the defendants.

*M. M. Horblit,* (*H. A. Eyges* with him,) for the plaintiff.

PIERCE, J. From the report of the auditor, and evidence introduced at the jury waived hearing, it appears that on May 12, 1919, one Philip E. Gash opened a margin account with the defendants under the name of "P. E. Gash" and signed a customer's registration card. This card set out certain stipulations and conditions which should govern the transactions between them, and contained a paragraph reading: "(2) In the making of loans or the delivery of securities either for my account or for the account of your other customers in the usual and regular course of your business, I hereby authorize you to loan, hypothecate or otherwise use all securities held or carried for my account from time to time upon the understanding that the same shall be

delivered upon payment of the amount due on my account: and I authorize you without demand or notice, to close out at public or private sale my account or securities held or carried therefor, whenever you deem it necessary for your protection."

At the time the "P. E. Gash" account was opened on May 12, 1919, Gash deposited $1,000, in accordance with the custom of brokers as to so called margin accounts, and thereafter the defendants executed various orders for the purchase and sale of securities on orders of purchase and sale signed by P. E. Gash, shown on the original ledger sheets, beginning May 12, 1919, and ending January 31, 1920. In August, 1919, Gash opened a second margin account with the defendants, this account being carried on their books as " P. E. Gash a/c 2." In September, 1919, A. N. Gash, brother of P. E. Gash transferred an account belonging to him to Philip E. Gash and the defendants merged this account into the " P. E. Gash a/c 2," so designated. Prior to January 31, 1920, Gash traded in the two margin accounts, gave orders for the purchase and sale of securities for his accounts on signed printed slips, the order itself identifying the particular margin account which he intended the order to be charged to and carried in. These accounts were kept on separate and independent ledger sheets and prior to January 31, 1920, monthly statements were sent to P. E. Gash of the No. 1 and No. 2 accounts separately.

On January 31, 1920, Gash owed the defendants on the shares of stock which the defendants were carrying for him on the " No. 1 account " $22,591.95. It further appeared that a then liquidation of this account would have produced a credit balance of $5,488.05 at the high price and of $4,150.80 at the low price of the stocks, had they been sold on that day. It further appeared that on the same day Gash owed the defendants on the shares of stock they were carrying for him on the No. 2 account $5,154.81, and that on sale of these stocks there would have been an equity of about $150.

On January 31, 1920, Gash made a written assignment to the plaintiff of all his right, title and interest in certain enumerated stocks as "credited by the defendants," which stocks

were those carried by the defendants in the No. 1 account. The same day Gash and the plaintiff went to the office of the defendants and Gash notified the officers of the defendant firm that he desired to transfer his account No. 1 to the plaintiff. An order was thereupon drafted for, and signed by, Gash in the office of the defendants. The order reads as follows: " Please transfer my account to that of A. Pizer [the plaintiff] 655 Cross Street, Malden and oblige." The defendants assented to the assignment, the plaintiff signed a registration card, in form similar to the registration card signed by Gash when his accounts were opened. The defendants closed the No. 1 account on their books and opened a new account in the name of " A. Pizer "; and thereafter, in their bookkeeping and in their monthly accounts, treated Pizer as the person with whom they were dealing so far as concerned account No. 1 and the securities carried on that account.

There were four hundred and forty shares of stock in the No. 1 account, and these shares were credited in the name of A. Pizer on January 31, 1920, and debited with the sum of $22,591.95. On February 4 and 5, 1920, three hundred and forty shares of stock were sold out of the four hundred and forty shares of stock that were in the No. 1 account on January 31, 1920. The liquidation of the No. 1 account removed and voided the debit side of the account and left a credit balance on April 30, 1920, of $1,437.18, one hundred shares of International Nickel of the then value of $1,950 and a Liberty Bond of the value of $45. On April 30, 1920, the plaintiff made a demand on the defendants for the payment of the balance standing to his credit on that day, to wit, $1,437.18, and for the delivery to him of the one hundred shares of International Nickel and the Liberty Bond. The defendants, speaking through one Dennett, the manager in charge of the business, refused to meet this demand, claiming to hold the No. 1 account to protect the No. 2 account, as the defendants had notified the plaintiff they should do on February 10, 1920. On April 30, 1920, taking both accounts together there was a debit balance in cash of $1,237.20 after crediting the cash balance due on the No. 1 account against

the debit due under the No. 2 account and neither the plaintiff nor P. E. Gash has ever at any time offered to pay the said debit balance due the defendants. There were no purchases on the No. 1 account after January 31, 1920, and since April 30, 1920, to the time of the trial there was no change in either the No. 1 or No. 2 account.

For the defendant there was evidence, if believed, to warrant a finding that the assignment was feigned, was intended only to protect the account against creditors of Gash, and that Pizer and Gash were told by the defendants' manager before the new account was opened, " We will do this to accommodate you, but you must remember that our right will in no way be affected by the transfer."

Notwithstanding the fact that the account which was opened with Gash on May 12, 1919, was separated into accounts numbered 1 and 2 and thereafter until January 31, 1920, was treated as if each account had been owned by different individuals, it is obvious the defendants had a general lien on all the securities purchased for the account of P. E. Gash and credited to him in the No. 1 and No. 2 accounts, to secure the payment of the general debit balance of $27,746.76 then due and payable on demand, if there was no special contract limiting the general lien rights of the defendants. *Clark* v. *Northampton National Bank,* 160 Mass. 26. *Wood* v. *Boylston National Bank,* 129 Mass. 358, 359, 360. We agree with the contention of the defendants that Gash on January 31, 1920, on the evidence before us, could not have compelled the defendants to pay Gash the credit balance shown in account No. 1 on that day, without deducting the debit balance as it then stood in account No. 2. In the absence of an agreement to relieve the securities in the No. 1 account from the burden of the debt of Gash to the defendants in the No. 2 account, the assignment of the shares in the No. 1 account transferred to Pizer the right only which Gash then had in such account and in the securities named in the assignment and credited in the account.

The " Substitute Declaration " is founded solely upon the theory of an accepted assignment of a part of an entire account which part, for the convenience of the assignor, was

separated from the remaining part on the books of the defendant.   On the facts above set out it is plain the plaintiff could not recover when the writ was served if the right of recovery rests upon the assignment right of Gash to recover the balance found due upon an accounting.   But the evidence warranted a finding that there was a complete novation between the plaintiff, Gash and the defendants, whereby account No. 1 was discharged of all liens, save such as pertained to the charge of the defendants against the securities assigned to the plaintiff and enumerated in the assignment and the account, and whereby the plaintiff became charged with, and Gash became discharged from, the debit obligations of that account.   The evidence therefore warranted the finding that the defendants on January 31, 1920, made a new contract for a valuable consideration with the plaintiff, and that thereafter the rights and obligations of the plaintiff and defendants stood distinct and apart from the contractual relations which came into existence in May and August, 1919, between the defendants and Gash.

The presiding judge under the authority of G. L. c. 231, § 51, allowed the plaintiff to amend his declaration " by setting up specifically the making of a new contract between the plaintiff and the defendant on January 31," 1920.   The defendants duly excepted to the allowance, and now contend that the allowance of the amendment after the trial of the case on " the alleged right of the plaintiff to demand such credits and securities in his capacity as the assignee . . . operated to deprive these defendants of their property without due process of law as secured by the 14th Amendment to the Federal Constitution — inasmuch as the defendants never had any hearing or trial at all nor any opportunity to be heard in their defence to the said ground of liability upon which the said finding in favor of the plaintiff is based."   The amendment allowed sets up no allegations which are not covered by evidence.   A party to an action has no vested right to have a case decided and determined upon a form of procedure which may have been inadvisably or mistakenly chosen.   The evidence may show a substantial variance between the allegations of the declaration and the proof, and

at the same time disclose a legal right which the court in its discretion may make available and valuable by the allowance of an amendment " in matter of form or substance." *Ball* v. *Claflin,* 5 Pick. 303, 304. *Beers* v. *McGinnis,* 191 Mass. 279. *Stevens* v. *Nichols,* 157 U. S. 370. See also *Whipple* v. *Rich,* 180 Mass. 477, 480. We find no error in the allowance of the amendment.

We have considered every point argued in the brief which is based on exceptions and find no reversible error.

*Exceptions overruled.*