### LOUIS F. CHAPIN vs. THE HOLLISTER-WILSON LABORATORIES.

Suffolk.   November 18, 1924. — January 29, 1925.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & WAIT, JJ.

*Practice, Civil,* Amendment. *Contract,* Construction, Performance and breach, Termination, Of employment.

At the close of the evidence at the trial of an action for damages resulting from a breach of contract, the defendant moved that a verdict be entered in his favor and the trial judge asked "if the motion was made on the ground that there was a variance between the pleadings and the proof in that the plaintiff had declared upon a written contract and at the trial attempted to prove an oral modification of this contract which was not, in any way, referred to or set up in the plaintiff's declaration." The defendant replied, "that this was one of the grounds

upon which the defendant relied but that the motion was also made upon general grounds." Thereupon the judge allowed a motion of the plaintiff to amend his declaration by adding a count setting up a modification of the contract which was supported by the evidence. *Held*, that the allowance of the amendment was within the authority given by G. L. c. 231, § 51.

A contract in writing between a corporation and a salesman stated that payments were to be made to the salesman of twenty per cent of the first $8,000 net sales per month in a specified territory and a graduated commission for sales in the territory above that amount with a drawing account which was to increase if the sales exceeded that amount. The contract provided further that such "arrangement is made on the basis of the volume indicated and on the assumption that this amount can be delivered by" the salesman and assistants, and that it "is understood that the practical workings of the agreement cannot be definitely estimated and that it will be tentative for a period of one year with the privilege of renewal for the next five years if the sales for the first year amount to $8,000 per month or over, or a volume which shall be satisfactory to" the corporation. *Held*, that

(1) The parties did not intend that, without the payment of damages, either party to the agreement might, with or without reason, repudiate the contract whenever in any month the plaintiff should not sell goods in the amount of $8,000;

(2) The corporation did not have a right to terminate the contract when an experiment of three months showed a loss, nor when it appeared that the plaintiff had not sold, in any month of the three months, goods in the amount of $8,000;

(3) It was intended that the agreement should have a fair trial and that the salesman should have the coöperation of the corporation.

At the trial of an action by the salesman against the corporation for a breach of the contract above described, there was evidence tending to show that the defendant insisted that the plaintiff should not operate in a certain material portion of the territory specified in the contract, that the plaintiff made every effort to fulfil the terms of his contract, that the defendant made payments thereunder up to a certain time, and that it then ceased. *Held*, that

(1) A verdict for the plaintiff was warranted;

(2) It was proper for the plaintiff to introduce evidence of sales within the territory, made within a reasonable time before and after the execution of the agreement, to enable the jury to estimate the value of the contract to the plaintiff, and to determine with rational probability the reasonableness of the plaintiff's contention that with proper support from the defendant he could have sold goods during the year, to the value at least of $200,000.

CONTRACT, with a declaration as amended in two counts, described in the opinion. Writ dated June 29, 1920.

In the Superior Court, the action was tried before *Raymond*, J. Material evidence and rulings by the trial judge

are described in the opinion. The jury found for the plaintiff in the sum of $7,500. The defendant alleged exceptions.

*A. L. Taylor*, for the defendant.

*C. W. Bond*, for the plaintiff.

PIERCE, J. This is an action to recover damages for the breach of a contract, alleged to have been made between the plaintiff and defendant on January 30, 1920. At the close of all the evidence the defendant moved for a directed verdict; the judge asked " if the motion was made on the ground that there was a variance between the pleadings and the proof in that the plaintiff had declared upon a written contract and at the trial attempted to prove an oral modification of this contract which was not, in any way, referred to or set up in the plaintiff's declaration." The defendant replied, " that this was one of the grounds upon which the defendant relied but that the motion was also made upon general grounds." Thereupon the judge allowed a motion of the plaintiff to amend his declaration by adding " Count 2," and the defendant excepted.

The contract, set out by reference in counts 1 and 2 of the declaration, among other things provided: " It is understood that Mr. Chapin will devote his entire time to the promotion of The Hollister-Wilson Laboratories' products in the territory under his jurisdiction and that he will personally cover the more important buying centers and will engage enough salesmen so that the territory will be adequately covered. . . . It is also understood that any salesmen engaged by Mr. Chapin are in fact and shall be considered employees of The Hollister-Wilson Laboratories and that the special territorial advantages offered under this agreement are made to cover the administrative services rendered by Mr. Chapin."

The evidence introduced at the trial warranted a finding that, subsequent to the execution of the alleged contract, the president and manager of the defendant corporation shortly after February 16, 1920, told the plaintiff " he would have to give up the New York territory but he would be allowed to pick up his former or similar connections "; that the plaintiff did not assent to the declaration of the manager,

and from that time until May, 1920, made every effort to fulfil his part of the contract, receiving of the defendant the advances and payments as provided in the original contract, with the exception of payments which were due to be made on May 1 and on May 15, 1920; that during May, 1920, Messrs. Lowenstein, Hollister and Burns, officers of the defendant corporation, instructed the plaintiff that he must get out of the New York territory and the territory additional to the New England territory, and confine his efforts to Greater Boston; that they said he had no contract, and suggested a new working arrangement on a commission basis, he to pick up his old connections or similar ones, if possible, and not devote his entire time to the defendant's services; that the plaintiff then made an audit of his Boston office, checked up his stock, and then removed from the office all the property of the defendant.

The allowance of the amendment was fully authorized by G. L. c. 231, § 51, to "enable the plaintiff to sustain the action for the cause for which it was intended to be brought." *Pizer* v. *Hunt*, 250 Mass. 498.

The defendant contends that the contract taken as a whole contemplated that the plaintiff should sell goods in the amount of $8,000 per month, and that, if this was not done, or for any other reason, the defendant, or either party, had the right to terminate the agreement within the period of one year; and if it was not terminated then, either party had a right to renew the contract for five years if the sales for the first year amounted to $8,000 per month or over. .

The provision of the contract as to "remuneration" reads: "It is understood and agreed that Mr. Chapin will be paid 20% on the first $8,000.00 net sold in the territory outlined above each month. Upon sales above this amount per month, a graduated commission will be given. He will be allowed a drawing account of $500.00 per month, which will be sent in checks of $250.00 on the first and fifteenth of each month. Drawing account will be increased $300.00 per month to cover each new salesman employed operating in the territory mentioned. This arrangement is made on the basis of the volume indicated and on the assumption

that this amount can be delivered by Mr. Chapin and three additional salesmen. . . . '' The contract also stated: '' It is understood that the practical workings of the agreement cannot be definitely estimated and that it will be tentative for a period of one year with the privilege of renewal for the next five years if the sales for the first year amount to $8,000.00 per month or over, or a volume which shall be satisfactory to The Hollister-Wilson Laboratories.'' It is plain it was never intended that, without the payment of damages, either party to the agreement might with or without reason repudiate the contract whenever in any month the plaintiff should not sell goods in the amount of $8,000. The practical workings of the agreement could not be definitely estimated; accordingly, the provision as to the sales was said to be '' tentative,'' that is, experimental during the year, with a fixed monthly drawing account of $500, payable '' on the first and fifteenth of each month.''

The defendant contends that the agreement itself was tentative, an essay, a trial; and that it had a right to terminate the contract when the experiment of three months showed a loss, as well as when it appeared that the plaintiff had not sold in any month of the three months goods in the amount of $8,000. This interpretation of the terms of the agreement above quoted is technical, and plainly does not express what was understood by the parties when they said that the '' practical workings of the agreement cannot be definitely estimated and that it will be tentative for a period of one year.'' Clearly it was intended that the agreement should have a fair trial, and that the plaintiff should have the coöperation of the defendant.

The contention of the defendant that there was no evidence to support the second count cannot be sustained. This count relied upon a breach of the contract, and set out the instructions of the defendant in justification of the plaintiff's alleged failure to carry out his part of the contract. The evidence for the plaintiff was ample that he fully performed the contract by him to be performed, and to support his contention that he was prevented from going on with it without legal justification. In these circumstances it was

proper for the plaintiff to introduce evidence of sales within the territory, made within a reasonable time before and after the execution of the agreement, to enable the jury to estimate the value of the contract to the plaintiff, and to determine with rational probability the reasonableness of the plaintiff's contention that with proper support from the defendant during the year from January 30, 1920, until January 30, 1921, he could have sold goods at least to the value of $200,000. *Loughery* v. *Huxford*, 206 Mass. 324, 326.    *F. E. Atteaux & Co.* v. *Mechling Brothers Manuf. Co.* 245 Mass. 483, 502.

We have examined with great care the rulings of the trial judge as to the admissibility of evidence, as also his refusals to give certain requests of the defendant, and are of opinion that they present no reversible errors in law.    A statement of the exceptions of the defendant and a *seriatim* examination of them would unduly extend the opinion without a compensating gain to the analysis of the case already given.

<em>Exceptions overruled.</em>