## HAMMON v. PAINE et al.
### No. 2629.

Circuit Court of Appeals, First Circuit.
Feb. 25, 1932.

William H. Coolidge and Philip E. Coyle, both of Boston, Mass. (Thomas H. Breeze, of San Francisco, Cal., of counsel), for appellant.

S. Leo Solomont, of Boston, Mass. (William P. Everts, of Boston, Mass., on the brief), for appellees.

Before BINGHAM and WILSON, Circuit Judges, and BREWSTER, District Judge.

BINGHAM, Circuit Judge.

This is an appeal from a judgment of the District Court for Massachusetts in favor of the defendants. The writ was brought on the 24th of August, 1929, by Mary A. Hammon against the defendants, copartners doing a brokerage business as Paine, Webber & Co. The declaration contains three counts. In the first count it is alleged that the defendants had converted to their own use 1,955 shares of the capital stock of the California Petroleum Corporation; in the second, the conversion of $5,087.85 cash and the same 1,955 shares of stock; and in the third, a breach of contract in that the defendants refused to deliver to the plaintiff the said 1,955 shares of stock and the $5,087.85 cash.

The case was referred to an auditor and, on the coming in of the auditor's report, a jury having been waived in writing, the case was submitted to the court on the auditor's findings, which the parties agreed should be conclusive. The pertinent facts found are as follows:

The plaintiff, desiring to engage in certain stock transactions, but not in her own name, turned over 5,000 shares of Ventura Company stock to one John Cunniff on the understanding that he was to use it as margins on a trading account for her. Cunniff proceeded to do this, employing the defendants as his brokers; the identity of the plaintiff, with her knowledge and consent, not being disclosed to them. December 31, 1923, with the full knowledge and consent of the plaintiff, this account was transferred to Bernard Cunniff, who had the same authority to deal with the defendants in respect to the account as though it was his own. From March, 1920, Bernard Cunniff had had with Paine, Webber & Co. five different accounts of his own, numbered consecutively from 1 to 5. But this was unknown to the plaintiff. In December, 1923, these accounts had been closed except No. 1, which was closed December 29, 1924, and account No. 5, in which the last entry was August 15, 1927. The account carried by Bernard Cunniff for the plaintiff was entered on the books of Paine, Webber & Co. as account No. 6 and, until August 12, 1927, was kept separate and distinct from the other accounts of Cunniff, although Paine, Webber & Co. knew nothing of Mrs. Hammon's interest in it until August 12, 1927. Account No. 6 had always a credit, and on March 1, 1926, it had 4,426 shares of California Petroleum Corporation stock and $19,461 cash credited to it with no debits. On March 12, 1926, Mrs. Hammon directed Cunniff to deliver the stock and cash to a certain bank in Boston for her. Cunniff was unable fully to comply because account No. 5 showed a debit balance and the defendants claimed the right to apply the credit balance in No. 6 to the debit balance in No. 5. He did, however, obtain the $19,461 in cash and 2,500 shares of the stock which he placed in banks at the disposal of the plaintiff, and the defendants retained 1,955 shares of stock. The defendants had no knowledge and were not put on notice that the cash and securities in account No. 6 did not belong to Bernard Cunniff personally until they received a telegraphic notice from the plaintiff to that effect, dated August 10, 1927, upon the receipt of which, on August 12, 1927, they transferred the 1,955 shares of stock and $5,087.85 cash, which had accumulated as dividends on the stock, from account No. 6 to account No. 5, and on August 15, 1927, sold the stock. This cash and the proceeds of the stock reduced the debit balance in No. 5 account to $3,362.

As early as May, 1926, the plaintiff had knowledge that the defendants were claiming the right to hold the credits in account No. 6 to secure the indebtedness in another account of Cunniff, but took no steps to inform the defendants of her ownership or interest in those credits until August 10, 1927. The auditor found that long before

August, 1927, Cunniff had assented to the position of the defendants that they had the right to apply the cash and securities standing to his credit in account No. 6 to the payment of his indebtedness in account No. 5.

According to the brokerage law of Massachusetts, as expounded by its courts, in marginal transactions or accounts such as this, the relation between the broker and customer is that of debtor and creditor, accompanied with an obligation on part of the broker to carry, during the continuance of the account, the stock purchased for it and to deliver such stock to the customer upon the latter's paying any debit balance due and demanding the stock; the title thereto meanwhile remaining in the broker. Wood v. Hayes, 15 Gray (Mass.) 375; Chase v. Boston, 180 Mass. 458, 62 N. E. 1059; Furber v. Dane, 203 Mass. 108, 89 N. E. 227; Hall v. Paine, 224 Mass. 62, 112 N. E. 153, L. R. A. 1917C, 737; Hall v. Paine, 230 Mass. 62, 119 N. E. 664; Crehan v. Megargel, 235 Mass. 279, 126 N. E. 477. See In re Codman, Fletcher & Co. (C. C. A.) 287 F. 806, 809; Lavien v. Norman, 55 F.(2d) 91, decided by this court January 20, 1932.

In this case, however, the plaintiff claims account No. 6 had long since ceased to be a marginal account because of the fact that there had been no transactions therein for some time; that the only items in it were credited items and that the title to the stock automatically vested in the customer on the elimination of all debit items. This is not so. The title, in the first instance, being in the broker, he would have to act in order to transfer it to the customer and, if he did not transfer it on demand, it would simply be a breach of his obligation or contract for which the customer could collect damages. In re Swift (C. C. A.) 112 F. 315.

The plaintiff, therefore, cannot recover on the first two counts for conversion, she having no right to the possession of the stock, and the question is whether the defendants breached their contract made with Cunniff, when account No. 6 was opened, by refusing on August 12, 1927, and thereafter to deliver the cash and stock credited to that account on demand of the plaintiff, the hitherto undisclosed principal of Cunniff.

As already said, in Massachusetts, where these transactions took place, Cunniff was at all times, while accounts Nos. 5 and 6 were running, either a debtor or a creditor of the defendants. Although the auditor stated that he did not find that Cunniff at the time of depositing Mrs. Hammon's shares of Ventura stock with the defendants "entertained any purposes, or intent, to pledge those shares for any account of his own other than" No. 6, yet, without something more appearing to the broker than that a customer was running two separate accounts, presumably of his own, the law gives the broker the right to treat them as one. Pizer v. Hunt, 250 Mass. 498, 146 N. E. 7, 8; Miller v. Schloss, 159 App. Div. 704, 144 N. Y. S. 996, 999; In re European Bank, 8 Ch. App. 41; Dos Pasos on Stockholders (2d Ed.) § 796; Morse on Banking (6th Ed.) 327; 9 C. J. 665. In Pizer v. Hunt, supra, it is said:

"Notwithstanding the fact that the account which was opened with Gash on May 12, 1919, was separated into accounts numbered 1 and 2 and thereafter until January 31, 1920, was treated as if each account had been owned by different individuals, it is obvious the defendants had a general lien on all the securities purchased for the account of P. E. Gash and credited to him in the No. 1 and No. 2 accounts, to secure the payment of the general debit balance of $27,746.76 then due and payable on demand, if there was no special contract limiting the general lien rights of the defendants. Clark v. Northampton National Bank, 160 Mass. 26, 35 N. E. 108; Wood v. Boylston National Bank, 129 Mass. 358, 359, 360, 37 Am. Rep. 366. We agree with the contention of the defendants that Gash on January 31, 1920, on the evidence before us, could not have compelled the defendants to pay Gash the credit balance shown in account No. 1 on that day, without deducting the debit balance as it then stood in account No. 2. In the absence of any agreement to relieve the securities in the No. 1 account from the burden of the debt of Gash to the defendants in the No. 2 account, the assignment of the shares in the No. 1 account transferred to Pizer the right only which Gash then had in such account and in the securities named in the assignment and credited in the account."

It is true that in Pizer v. Hunt et al., one of the two accounts, including the securities therein, had been assigned by Gash to Pizer with the assent of defendants, the brokers, "whereby account No. 1 [the assigned account] was discharged of all liens, save such as pertained to the charge of the defendants against the securities assigned to

the plaintiff and enumerated in the assignment and the account, and whereby the plaintiff became charged with, and Gash became discharged from, the debit obligations of that account," and what was later said with reference to one account being security for another was unnecessary. But we are satisfied that the statement contains the governing rule where the securities are held by the broker in marginal accounts and in his capacity as broker. The cases cited by the plaintiff to sustain the contrary view are like Hoppenstedt v. Amy (Sup.) 174 N. Y. S. 742, and Leahy v. Lobdell, Farwell & Co. (C. C. A.) 80 F. 665, where the broker held or might be found to have held some of the securities in a capacity other than that of a broker dealing with the customer by means of marginal accounts, or like Wyckoff v. Anthony, 90 N. Y. 442, where the securities were pledged to the banker or broker to secure the payment of a particular loan.

■ The plaintiff further contends that, however this may be when the several accounts are in fact the personal accounts of the same customer, it is a different proposition when a third party is the owner or is interested in one of them. This is true if the interest of the third party or principal is known to the broker. But one dealing with the agent of an undisclosed principal can do no other than treat the agent as the principal, and he cannot be deprived of any rights which have attached during such dealings when later the real party in interest claims the benefit of the transactions. Lime Rock Bank v. Plimpton, 17 Pick. (Mass.) 159, 28 Am. Dec. 286; Deane v. American Glue Co., 200 Mass. 459, 86 N. E. 890.

■ We consider each of the two accounts as standing at all times as security for the other, and not as two separate claims where it would be necessary for the creditor to take definite action to protect himself by offsetting one against the other before other rights had intervened. These were simple debit and credit accounts and were in no way analogous to checking accounts in a bank where it has been held, as in Simmons Hardware Co. v. Bank of Greenwood, 41 S. C. 177, 19 S. E. 502, 44 Am. St. Rep. 700, and in Niblack v. Park National Bank, 169 Ill. 517, 48 N. E. 438, 39 L. R. A. 159, 61 Am. St. Rep. 203, that the account is held by the bank with an assumed or implied promise to pay all checks drawn against it and presented to the bank as long as there remain any credits in the account; and hence a check presented before the application of credits in the deposit account to the indebtedness of the depositor to the bank must be honored.

■ We have said the law gave the defendants the right to apply the credits and securities of No. 6 account to the debits of No. 5. But apart from this the auditor found that Cunniff "after August, 1924 but before August, 1927," assented "to the position of Paine, Webber & Company that they had the right to apply the cash and securities standing in account No. 6 to the payment of his indebtedness in account No. 5," and, acting upon this, in April, 1926, when the plaintiff was calling on him for all her stock and cash, he left in account No. 6 enough stock at the then market price thereof to cover the indebtedness in account No. 5. This of itself would raise an implied contract giving the right to the defendants to thus apply the credits of account No. 6.

■ As early as May, 1926, and over a year before Mrs. Hammon sent the telegram of August 10, 1927, she knew of some other account of Cunniff with Paine, Webber & Co. which was involved with account No. 6, and, as early as August 25, 1926, knew the details of all the transactions of Cunniff with Paine, Webber & Co. as to the two accounts and that the firm was claiming a lien on the 1,955 shares in account No. 6 to secure payment of Cunniff's personal indebtedness to them under account No. 5, and did not notify the defendants of her claim of ownership of that stock. Instead thereof, and to secure herself from loss in case she eventually was unable to obtain this stock, she made an agreement with Cunniff by which 2,505 shares of Colloidal Equipment Corporation stock belonging to him were, on the execution of the agreement, to be deposited in the Atlantic National Bank of Boston, thus taking it from assets of Cunniff which Paine, Webber & Co. might have resorted to had they known that their supposed security in the 1,955 shares of California Petroleum Corporation stock was questioned. It was nearly a year after this before she made any demand on the defendants for this stock and they knew that any one save Cunniff had any interest therein. By thus lying quiescent to the detriment of the defendants she is now estopped to assert her right, if she had any.

It may be said, moreover, that in view of the particular facts and circumstances shown to exist in this case, our conclusion would not be different if the relation between customer and broker, on a margin account,

were that of pledgor and pledgee, and not that of debtor and creditor.

The judgment of the District Court is affirmed, with costs in this court.