No. 12,919.

HOPPER *v*. J. H. MARSCHNER & Co. ET AL.
(31 P. [2d] 321)

Decided February 13, 1934.   Rehearing denied March 19, 1934.

Messrs. QUAINTANCE & QUAINTANCE, Mr. HARVEY RIDDELL, for plaintiff in error.

Mr. CLARENCE L. IRELAND, Mr. R. H. BLACKMAN, for defendants in error.

*In Department.*

Mr. Justice Campbell delivered the opinion of the court.

Plaintiff Hopper's principal business in the city of Denver is that of a cleaner and dyer of wearing apparel. From time to time, however, through W. L. Avery, a Denver stockbroker, the plaintiff bought and sold stock and other securities. Upon the death of Avery in 1930, the defendant Marschner, who had been an employee of Avery during the lifetime of the latter and familiar with, and who succeeded to, his business, induced the plaintiff, so the complaint says, through fraud and deceit, to employ him, the said Marschner, and thereby plaintiff did employ the defendant Marschner as his broker in such business. Plaintiff says that in his transactions with Avery the latter kept a record thereof in his books in two separate and distinct accounts: one called a "savings account," the other, "speculative account," which, by agreement between them, were to be kept separate and distinct. It is altogether clear, as the record shows upon undisputed facts and the principle of law applicable thereto, that there was no agreement or understanding between the plaintiff and Avery or defendant Marschner, who took over the stock business of Avery, that these two accounts should be continuously kept or recorded as distinct and separate accounts. At first, and for his own convenience, defendant so kept them, but afterwards consolidated them. As is not unusual in such business all deals as to the buying and selling of these securities were not profitable. In some instances there were profits; in some, losses. That Marschner was the successor of Avery and took over his stock business is not disputed. True it is that plaintiff Hopper alleges in general terms there was fraud on the part of Marschner, but the fraud is not specifically alleged.

The defendant for a time carried these two accounts on his books as separate items, but later for convenience he consolidated them to plaintiff's knowledge

as one account and in his statements to plaintiff of this account from time to time it clearly appears that the defendant Marschner had so consolidated them on his books and that plaintiff was so notified and he said that such consolidation was satisfactory to him. We are constrained to say that it must have been, as the defendant says, an afterthought on the part of plaintiff that the two accounts were to be kept separate and distinct so long as the business relations between the parties continued. Certain it is there is no evidence here except the bare statement of the plaintiff that these two accounts were to be kept separate and distinct, one from the other. His own written statements, however, show that he knew these accounts had been consolidated and that he approved the same. That the law upon the undisputed evidence is against plaintiff is altogether clear. In 9 C. J. p. 665, the text reads: "A stockbroker has, in the absence of a special agreement to the contrary, a general lien on securities of the principal which come into his hands in the course of business." To this statement a number of authorities are cited which it is unnecessary to reproduce here.

In *Miller v. Schloss,* 144 N. Y. S. 996, it is said in the syllabus, which the opinion shows is a correct statement: "As between a cotton broker and his customer, where the broker carries two accounts for the customer and one account shows a loss and the other a profit, the broker, in order to ascertain the amount due from him to his customer or from his customer to him, may set off the profit in one account against the loss in the other and pay or receive only the net difference." That decision exactly fits this case. Indeed, after the defendant consolidated these two accounts as one and in his statements of the account thereafter rendered to the plaintiff and received by the latter, this consolidation of the two accounts was clearly stated, that the defendant treated all of the collateral of the plaintiff in his possession as security for the total indebtedness. One par-

ticular exhibit in this record, being a letter which the defendant sent to the plaintiff, specifically states that all of the collateral in defendant's possession deposited by the plaintiff is held for the entire indebtedness. The plaintiff admits he received these statements and he made no objection to the consolidation. On the contrary, he gave his consent thereto.

In *Pizer v. Hunt*, 250 Mass. 498, 146 N. E. 7, it was said: "Notwithstanding the fact that the account which was opened with Gash on May 12, 1919, was separated into accounts numbered 1 and 2 and thereafter until January 31, 1920, was treated as if each account had been owned by different individuals, it is obvious the defendants had a general lien on all the securities purchased for the account of P. E. Gash and credited to him in the No. 1 and No. 2 accounts, to secure the payment of the general debit balance of $27,746.76 then due and payable on demand, if there was no special contract limiting the general lien rights of the defendants." Cited in support of such statement are: *Clark v. Northampton National Bank*, 160 Mass. 26, 35 N. E. 108; *Wood v. Boylston National Bank*, 129 Mass. 358. The consolidation of these two accounts by the defendant was clearly stated to the plaintiff and the defendant treated all of the collateral of the plaintiff in his possession as security for the entire indebtedness owed to him by the plaintiff.

In the plaintiff's pleadings there are assertions that fraud was committed by the defendant, but there is no proof whatever of such statements. The trial was to a jury. At the close of the evidence the presiding judge, on defendant's motion, directed the jury to return a verdict in favor of defendant, on the issues joined by defendant's answer to the complaint, and to return a verdict in the sum of $444.86 in favor of the defendant on his counterclaim against plaintiff.

The trial court was clearly justified by the evidence in directing these verdicts and in rendering judgment in ac-

cordance therewith. No other or different judgment could have been properly rendered under the uncontradicted evidence. Judgment affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE HILLIARD concur.