## Henry B. Warner & Company, Inc., v. McCormick

*Therman P. Britt,* for plaintiff.

*Robert W. Honeyman,* of *Fox, Differ & Honeyman,* for defendant.

DANNEHOWER, J., February 3, 1954.—Plaintiff company filed a complaint in trespass against defendant alleging fraud by defendant in the sale of certain shares of stock. Defendant filed an answer and counterclaim and plaintiff filed an answer to the counterclaim. Whereupon defendant has filed a motion for judgment on the counterclaim, which motion, after argument, is pending for decision.

The pleadings establish that on December 18, 1952, defendant delivered 500 shares of Leland Electric Company stock to plaintiff broker for sale in the ordinary course of business. Plaintiff sold said shares of stock to a New York broker on the same day, and on December 24, 1952, plaintiff paid defendant $11,577.85, representing the net proceeds, less sales expense and commissions. On December 31, 1952, plaintiff was notified by the New York broker that the shares were not market shares and not a proper delivery, and plaintiff was compelled to return the full price to the New York broker on January 9, 1953. Defendant refused to take back his stock or repay any of the money he received. Thereupon, plaintiff surrendered the shares to the Leland Electric Company and received $8,500. Meanwhile, on January 7, 1953, defendant purchased, and paid for in full, 100 preferred shares of the Philadelphia Transportation Company stock from plaintiff, and on January 9, 1953, defendant purchased and paid for in full, 100 common shares of Philadelphia Transportation Company stock from plaintiff. Although defendant paid for these shares in full, plaintiff, upon demand, has refused to deliver them to defendant, claiming that the Leland transaction was fraudulent and that defendant owes plaintiff the sum of $3,190, with interest, the loss he sustained on the Leland stock transaction, and in its answer to the counterclaim, contends that plaintiff has a general broker's lien on said shares of stock of the Philadelphia Transportation Company.

The question is: Does a stockbroker have a general lien on his customer's fully paid shares of stock, for a contingent indebtedness arising out of a prior separate stock transaction?

The only lien recognized in Pennsylvania in the instant situation is that retained by a pledgee. "It is a rule of law in Pennsylvania that the relation between a broker and his customer with respect to stock purchased upon margin is that of pledgor and pledgee": Sproul v. Sloan, 241 Pa. 284 (1913) ; Sterling's Estate, 254 Pa. 155 (1916). A stockbroker has, with respect to the stock, the rights of a pledgee, but upon payment, he is obliged to deliver the stock to the customer.

It is true that in some jurisdictions a stockbroker has a general lien, but only where the stockbroker and the customer conduct a continuous considerable business and keep a running account or accounts, wherein the customer is charged with the amounts advanced by the broker in the purchase of the stock and is credited with the various stocks held by the broker: Pizer v. Hunt et al., 250 Mass. 498, 146 N. E. 7 (1925) ; Hammer v. Paine et al., 56 F. 2d 19 (1932).

In such an arrangement, it can be said that the parties contemplated that the various items of stock held by the broker, as well as the margin deposited with him by the customer, shall be security for the balance of the general account due. No such relationship appears to exist between the present plaintiff and defendant. If such a relationship did exist, it was incumbent upon plaintiff to so aver in its answer to the counterclaim.

The court is of the opinion that plaintiff does not have a general lien under the present circumstances. Since there are no issues of fact and the court's inquiry is directed solely to a question of law which has been decided adversely to plaintiff, judgment should be granted for defendant on the counterclaim.

One more problem remains to be considered, i.e., the question of damages. While defendant, in his demand for relief, seeks to recover as damages the sum of $1,225, with interest, from January 15, 1953, the court is of the opinion that the damages should be fixed by a jury.

The Act of April 10, 1929, P. L. 476, sec. 1, 68 PS §481, provides that "in any proceeding hereafter instituted in any Court of this Commonwealth, in which damages are claimed for the conversion of stocks, bonds, or other like property of fluctuating value, the damages shall be limited to the difference between the proceeds of the conversion, or that portion thereof duly paid or credited to the owner, and such higher value as the property may have reached within a reasonable time after he had notice of the conversion. Where the facts are not in dispute, this period shall be fixed by the Court as a matter of law".

In Foley, Exec., et al. v. Wasserman et al., 319 Pa. 420 (1935), it was said that the act "clearly allows the recovery of the highest value between the *date* of the conversion and a reasonable time after notice thereof. This, of course, in no way prevents the recovery of the value at the date of the conversion. The Act is simply a limitation upon the recovery of damages in excess of that value".

Hence, in order to assess damages, the court must be appraised of the date of the conversion and the value of the stock at that time, which facts must be admitted. These facts do not appear in the pleadings except as unsubstantial inferences in defendant's demand for relief which have not been admitted by plaintiff. Therefore, said issues are for a jury to decide.

*Order*

And now, February 3, 1954, for the foregoing reasons, judgment is directed to be entered against plain-

tiff, Henry B. Warner & Company, Inc., and in favor of defendant, William J. McCormick, on the counter-claim, damages to be assessed by a jury.